PeaRSON, J.
 

 The case turns upon the construction of the contract. What did the parties mean by the stipulation “ that the slave was not to be carried out of the county, except at the hirer’s risk ?” The bailor supposed the slave would be in more danger if employed on water, or carried out of the county, than if he was employed on land in the county, and was induced to agree that the slave might be employed on water, or taken out of the county, provided the bailee would take upon himself the risk; and the stipulation amounts to this : “ 1 do not prohibit you from employing the slave on water, or carrying him out of the county; but, if you do so, and any thing happens to him, you must bear the loss; you take the chances — you do so at your risk — if nothing happens, well; and if anything does happen, you pay the damage.”
 

 It is certain that the liability of the bailee was to fee greater, if he carried the slave out of the county, than if he employed him on land in the county. The-question is, to what extent was his liability to be greater ? If the slave was employed on land in the county, the bailee was, according to the law of bailment, liable only for such loss as might happen by reason of some negr lect on his part; and the agreement was, if he chose to take the slave out of the county, he was then to be liable for any loss that might happen without reference to the question of neglect. In
 
 *318
 
 the words of the parties, “the risk ” was then to be on the hirer. In the absence of any stipulation, the risk of death by sickness or other cause, without neglect on the part of the hirer, was upon the bailor, and the intent was to put this risk upon the bailee, if he carried the slave out of the county. We are forced to make the stipulation extend to a death by sickness, without reference to the question of neglect, in the event the slave is carried out of the county; for, otherwise, it amounts to nothing, and the liability would be- no greater than if the slave had not been taken out of the county.
 

 Suppose the slave had been hired with a stipulation that he was not to be carried out of the county. It is settled, that, by ta/lring him out of the county, the bailee becomes liable for any loss that may happen, without reference to the question of neglect. Jones on Bailment, 69, TO, 121; Story on Bailments, sec. 418. Jones puts this case : “A. hires a horse to go to London; if he goes towards Bath, he becomes responsible for any
 
 accident
 
 that may befall the horse in his journey to Bath.” And this: “ Silver utensils are lent to a man for the purpose of entertaining a party of friends at supper in the
 
 metropolis,
 
 and he carry them
 
 into the country,
 
 there can be no doubt of his obligation to indemnify the lender, if the plate be lost by
 
 accident, however irresistible.”
 
 Such is clearly the rule of law: and it rests upon this ground: “ It may be, if the horse had not been taken towards Bath, or if the silver utensils had not been carried into the country, the accident would not have occurred. There is no telling whether it would or would not; but as the bailee violates the terms of the bailment, and makes himself a wrong-doer, it is ■fair that the risk of loss during the time that it is so misused, should be upon the bailee. In the case before us, there is .no stipulation that the slave should not be carried out of the county; but the parties seemed to be aware that it might be attended with some risk, and the intention was to put that risk upon the bailee, so as to make him liable for any loss that might occur without reference to the question of neglect. This was evidently fair, and was suggested by the same
 
 *319
 
 Court of justice that gave rise to tbe rule in regard to tbe bail-ees wbo violate tbe terms of tbe bailment. Tbe risk should be upon bim for whose benefit the thing is done.
 

 Mr.
 
 Heath
 
 admitted that tbe liability of the defendant was greater during the time that the slave was worked out of the county, than if he had not been carried out of it, but insists that although the defendant took the risk upon himself, yet the liability does not extend to all loss that might befall, but is confined to that which it results from — is a natural consequence of the fact of carrying him out of the county. For instanee? he says, if the slave had been accidentally and without neglect,
 
 killed by the
 
 falling of a tree while he was at work out of the county, the defendant would be liable; but otherwise, if the slave, while out of the county, is taken sick, and without neglect dies a natural death.
 

 The distinction cannot be maintained. If the defendant is liable in the one case, he is in the other. It is certain, if the slave had not been carried out the county, he would not have been killed by the fall of a tree in another county. So, it is certain, if the slave had not been carried out of the county, he would not have been attacked by sickness, and died out of the county. On the other hand, there is no way of telling, whether he would or would not have been taken sick and died, had not been carried out of the county. So, there is no telling whether a tree would or would not have fallen on him. It is this very uncertainty — this risk — that the defendant agreed to take upon himself, if he carried the slave out of the county.
 

 He also says, his client, not having violated the contract, should not be put upon the same footing and be treated as a wrong-doer. This is true; and the
 
 difference
 
 is this: one who violates the terms of the bailment becomes a wrong-doer, and is liable to an action, and will have to pay the costs and nominal damage, although the property is returned safe and sound, and no loss has befallen it during the time it was misused. Whereas, the defendant did not expose himself to an action by the mere fact of carrying the slave out of the county, and is
 
 *320
 
 only liable to indemnify tbe plaintiff for actual loss on account of wbat befell tbe property while out of tbe county. A further difference is, that tbe defendant can only be sued upon tbe contract.
 

 Mr.
 
 Heath
 
 finally toot tbe ground that bis client was only liable for nominal damages, as there was no direct proof, that the death of the slave was a natural consequence of his being carried out of the county; and he called our attention to the concluding remarks of the opinion in Twidy v. Sanderson, 9 Ired. 5. We have seen above that a bailee who violates tbe terms of the bailment, thereby subjects himself to an
 
 action;
 
 and although no aetual loss befalls the property during the time of the misuser, be is, nevertheless, liable for nominal
 
 damages;
 
 whereas, a bailee, who takes care to stipulate for the privilege of so using the property, provided he takes upon himself the risk, does not subject himself to an action, unless actual loss happens during the time that the property is being used at his risk. So if there be no actual damage, he is not liable at all. Twidy V. “SANDERSON was the case of a bailee who had violated tbe terms of tbe bailment, and was liable to be sued as a wrong-doer, whether there was actual damage or not. It is possible this idea presented itself to tbe Court, and suggested the remark, that the value of the slave was not the measure of damage as a matter of course; but however that may be, the remark was uncalled for, and must be treated as a mere
 
 dictum
 
 — something that fell from the Court, without having attention brought to bear and centred upon it, as it is on the point upon which the case turns.
 

 The nonsuit must be set aside, and there must be judgment for the plaintiff according to the verdict.
 

 Judgment reversed, and judgment on the verdict.