B. R. LACY, TREASURER OF THE STATE OF NORTH CAROLINA, v. HARTFORD ACCIDENT AND INDEMNITY COMPANY AND NATIONAL SURETY COMPANY.

(Filed 26 January, 1927.)

**1. Bailment—Contracts—Insurer.**

By special contract between the bailor and bailee, the liability of the latter may be enlarged to that of insurer, and he may be held responsible for cotton stored by it in its warehouse as bailee, and stolen therefrom.

**2. Same—Warehouseman—Negligence.**

Where under a contract of bailment the bailee receives certain bales of cotton and stores them in his warehouse, under agreement to return the identical bales upon return of the warehouse receipts in the manner provided in the contract, the liability of the bailee is that of insurer, and it is liable in damages when it is prevented by theft from performing its contract, though without negligence on its part.

**3. Same—Statutes—Cotton Warehouses—State Treasurer.**

Under the provisions of the statute to provide improved marketing facilities for cotton, C. S., 4907 *et seq.*, and the rules and regulations made by the State Board of Agriculture in pursuance thereof, 3 C. S., 4925(b), and the warehouse receipts, made negotiable by statute, etc., C. S., 4925(k), the warehouseman's liability to the State after it has paid the bailor for his stolen cotton, or the one entitled by the proper transfer of the certificate, is not dependent upon the exercise of due care by the warehouseman, or the absence of negligence by its employees or agents, for within the intent and meaning of the statute the liability of the warehouseman is that of insurer.

APPEAL by plaintiff from *Barnhill, J.,* at third April Term, 1926, of WAKE. New trial.

At the session of 1919 the General Assembly enacted a law entitled, "An act to provide improved marketing facilities for cotton" (Public Laws 1919, ch. 168; C. S., 4907 *et seq.*), and in 1921 passed an act under the same title enlarging the former act and providing in section 21, "Chapter 168 of the Public Laws of one thousand nine hundred and nineteen, and all other laws and clauses of laws in so far only as they

conflict with the provisions of this act are hereby repealed." Public Laws 1921, ch. 137; 3 C. S., 4925a and 4925u. Pursuant to this act a warehouse was organized in the 'town of Benson, in Johnston County, and bonded as a warehouse under the North Carolina State Warehouse System, with Simon P. Honeycutt as local manager or warehouseman. On 1 September, 1923, Honeycutt, in compliance with the act and the rules and regulations authorized and adopted thereunder executed his bond in the sum of $6,000 with the defendant National Surety Company as surety, and on 10 November, 1923, executed a similar bond in the sum of $4,000, with the defendant Hartford Accident and Indemnity Company, as surety. The condition of each bond was as follows: "Now, therefore, if the said principal shall faithfully perform all his obligations as a warehouseman under said act, and such additional obligations as a warehouseman arising during the period of such license, or any renewal thereof, as may be assumed by him under contracts with the respective depositors of cotton in such warehouse, then this obligation shall be null and void and of no effect; otherwise to be and remain in full force and virtue."

On 3 November, 1923, the North Carolina Cotton Growers Coöperative Association of Raleigh deposited with Honeycutt, the local manager, fifty-six bales of cotton, and Charles Johnson & Brother, of Benson, one bale, all which were received by Honeycutt and stored in the Benson Cotton Warehouse. Receipts or certificates were issued to the depositors in accordance with the provisions of the act. Some time thereafter these depositors, being ready, able, and willing to pay all charges, liabilities and liens due the local manager or the warehouseman and to surrender the receipts or certificates, demanded delivery of the cotton deposited by them and the local manager or warehouseman failed to return the cotton to the depositors or to either of them. The depositors then made demand upon the plaintiff, and he paid to the North Carolina Cotton Growers Coöperative Association $7,966.46, and to Charles Johnson & Brother $158.93, in consequence of the failure of the local manager or warehouseman to return the cotton which they had deposited in the warehouse at Benson.

The defendants alleged in their further defense that the cotton had been lost or destroyed, but not by any act, neglect, or default of the local manager or of the warehouse, but notwithstanding the exercise of due care the local manager was not able to make delivery of the cotton and could not be held to respond in damages.

The verdict and judgment were as follows:

This cause coming on to be heard and being heard before his Honor, M. V. Barnhill, judge, and jury, at the Third April Term, 1926, of this court, issues were submitted to and answered by the jury as follows:

1. Were the fifty-seven bales of cotton delivered to the warehouse under contract of the North Carolina and United States Warehouse Act and regulation for cotton warehouses thereunder and receipts issued therefor? Answer: Yes.

2. If so, did said Warehouse Company fail to redeliver said cotton upon tender of said receipts and payment of charges, etc.? Answer: Yes.

3. Was the failure of said Warehouse Company to redeliver cotton due to causes other than default or neglect on the part of said warehouseman, S. P. Honeycutt? Answer: Yes.

4. Was the failure of said Warehouse Company to redeliver said cotton caused by breach by Honeycutt of any of the terms of said warehousing act or regulations adopted thereunder or the terms of said contract as embraced within said receipts? Answer: No.

It is thereupon considered, ordered and adjudged that plaintiff recover nothing of the defendants in this action, and that defendants go without day and recover of the plaintiff their costs to be taxed by the clerk of this court.

The plaintiff excepted and appealed.

*Attorney-General · Brummitt and Assistant Attorney-General Nash and I. M. Bailey for plaintiff.·:*
*S. Brown Shepherd and· Ruark & Fletcher for defendants.*

ADAMS, J. It is insisted by the defendants that the relation existing between the owners of the cotton and the warehouseman was that of bailor and bailee, and that there is not sufficient evidence to subject the warehouseman's bond to liability for loss of the bales which were received and stored. The circumstances tend to show that the cotton was stolen—the defendants say without any default or neglect of the local manager and without any act subjecting them to liability in damages; and according to the verdict the warehouseman's failure to deliver the cotton upon demand of the owners was not due to his neglect or default. The plaintiff contends that the warehouseman by virtue of a special contract became liable as an insurer; that the first and second issues should determine the controversy; and not only that the third and fourth were unnecessary, but that the instruction in reference to them is not free from error. In our opinion the larceny or loss of the cotton does not relieve the warehouseman's bond of liability.

In *Hanes v. Shapiro,* 168 N. C., 24, 29, it is said: "In all ordinary classes of bailment losses occurring without negligence on the part of the bailee fall upon the bailor. The bailee's liability turns upon the presence or absence of negligence. In some exceptional kinds of bailments, as in case of carriers or innkeepers, there is a special liability,

approximating that of an insurer, but, generally speaking, there can be no recovery against a bailee for loss or damage to the property, in the absence of negligence." But the responsibility usually imposed by the law upon a bailee may be enlarged or diminished by special agreement. By express contract he may make himself an insurer; and as a rule he does this when he binds himself in a penal bond to perform the duties of his office without exception. "There is an established difference between a duty created merely by law and one to which is added the obligation of an express undertaking. The law does not compel to impossibilities; but it is a settled rule that if performance of an express engagement becomes impossible by reason of anything occurring after the contract was made, though unforeseen by the contracting party, and not within his control, he will not be excused." *Boyden v. U. S.,* 13 Wallace, 17, 20 Law Ed., 527.

The principle is approved in our own decisions. In *Robertson v. Lumber Co.,* 165 N. C., 4, the defendant hired the plaintiff's boat and agreed to keep it in good repair and return it in good condition. An employee of the defendant ran the boat over an obstruction in the river and damaged it; and with respect to the defendant's liability *Brown, J.,* said: "This is sufficient evidence of negligence, even if it is necessary to prove negligence. But under the contract as testified to by Hopkins, it is only necessary to prove a breach of the contract, viz., that the boat was not kept in good repair nor returned in good condition." True, in this case there was an affirmative answer to the issue of negligence, and this is referred to in *Sawyer v. Wilkinson,* 166 N. C., 497. Nevertheless the binding force of a special contract is there recognized and indeed is stressed later in the case of *Cooke v. Veneer Co.,* 169 N. C., 493. In the latter case the Court remarked: "The parties may, however, substitute a special contract for the contract implied in law. In such cases the express agreement determines the rights and liabilities arising from the bailment. The bailee may be relieved of all liability, or he may become an insurer. A bailee may thus become liable, irrespective of negligence or fraud for a breach of the bailment contract. . . . It is stated in the record that the "defendant agreed to redeliver the barge in as good condition as when received, ordinary wear and tear excepted." Under such contract the defendant is liable for the return of the barge in as good condition as when received, unless prevented by the act of God or the King's enemy." See, also, *Bell v. Bowen,* 46 N. C., 316; *Martin v. Cuthbertson,* 64 N. C., 328; *Austin v. Miller,* 74 N. C., 274; *Clark v. Whitehurst,* 171 N. C., 1.

The immediate question, then, is this: Does the record disclose a special contract which enlarges the responsibility of the warehouseman beyond the principles usually applied to the bailment relation?

The purpose of the statutes should be clearly understood. One object is to give the cotton crop the standing to which it is entitled "as collateral in the commercial world." C. S., 4925(a). In administering the statutory provisions the board of agriculture is empowered to make and enforce such rules and regulations as may be necessary to make effective the purpose of the law and to prescribe reasonable charges for storage. Sec. 4925(b). Bonds are required of the superintendent and employees; and to provide an indemnifying fund to cover any loss not covered by the bonds, and to provide for making the warehouse receipt universally acceptable as collateral, on each bale of cotton ginned in North Carolina during a specified time twenty-five cents to be collected by the ginner was to be paid into the State treasury. Secs. 4925(d) and 4925(e). It is important to note in this connection that the tax to provide an indemnifying fund is not the primary source from which any default is to be made good. The tax is intended to cover any loss not covered by the bonds, thus constituting the bonds, as was said by *Justice Hoke,* "the primary fund from which to make good the default of their respective principals." *Lacy v. Indemnity Co.,* 189 N. C., 24, 33. Any person owning cotton may store it and receive all the benefits accruing from State management; and when the owner stores it the local manager shall, if not previously done, have it graded and stapled. For cotton thus stored an official negotiable receipt, of the form and design approved by the board of agriculture, shall be issued under the seal and in the name of the State of North Carolina, upon the surrender of which the warehouseman shall deliver the identical cotton for which the receipt is given. Secs. 4925(i) and 4925(k). These receipts are transferable by written assignment and actual delivery and the cotton which they represent is to be deliverable only when they are physically presented for cancellation. Each official negotiable receipt carries the absolute title to the cotton it represents. Sec. 4925(l). The superintendent shall insure, or shall require the local manager to insure, and to keep insured for its full value all cotton on storage, and shall aid and assist the owner to secure and negotiate loans upon the receipts issued. Secs. 4925(q), 4925(r).

Complying with section 4925(b), the board of agriculture made and promulgated certain rules and regulations governing the administration of the warehouse system, announcing as one of the benefits that cotton stored in warehouses licensed under the State system should be fully protected at all times from loss by fire or theft, and providing in the original negotiable warehouse receipt that upon the return of the receipt properly endorsed and the payment of all charges and liabilities due the local manager, the cotton for which it was issued should be returned to the depositor or his order, the State guaranteeing the integ-

rity of the receipt. The obligation of the bond extends to and includes contracts which may be made by the warehouseman with those who store their cotton; and the express agreement in the receipt to return the cotton evidently refers to the "identical cotton" mentioned in section 4925(k). While not inadvertent to the general rule stated above that a mere promise to return the cotton would not indicate an intention to enlarge the ordinary liability of a warehouseman as bailee, we are convinced that the act of 1921 (3 C. S., 4925(a) *et seq.*), together with the bond, the receipt, and the rules and regulations which are made a part of the record, and which the appellees say is a part of the act, was intended to make the warehouse receipt, not only negotiable, but in the words of the statute, "universally acceptable as collateral." Sec. 4925(e). Manifestly the Legislature did not intend that this object should be defeated, or that the guaranty of the State should incur the hazard of loss, by holding the warehouseman to a rule of liability no more exacting than that of exercising due care. The special contract enlarged the responsibility of the warehouseman beyond the rule which usually prevails in the law of bailment. The act of 1921 contemplates the operation of a warehouse system without profit or loss by the State and emphasizes the necessity of insuring the security of the system "beyond any reasonable possibility of loss." Sec. 4925(p); *Lacy v. Indemnity Co., supra.*

We are referred by the appellees to the United States Warehouse Act, particularly to section 21, which provides that the warehouseman shall deliver the stored product upon demand made by the holder of the receipt "in the absence of such lawful excuse." It is only necessary to cite section 29: "Nothing in this act shall be construed to conflict with, or to authorize any conflict with, or in any way to impair or limit the effect or operation of the laws of any State relating to warehouses." U. S. Compiled Statutes, 1918, sec. 8747¾jj; *ibid.*, 1925, sec. 8747¾mm. We are likewise referred to C. S., 4048 and 4061, providing respectively that the warehouseman must deliver the goods "in the absence of some lawful excuse provided in this act," and that he shall be liable for any loss or injury to the goods caused by his failure to use reasonable care; but these sections are a part of the law applicable to warehouses generally under the law of bailment, and these restrictive clauses were no doubt purposely omitted from the act of 1921, which repealed all conflicting laws and clauses.

We think the defendants are liable as insurers, and upon this theory the case should be tried and determined.

New trial.