COY SWAIN v. TWIN CITY MOTOR COMPANY, INC.

(Filed 27 February, 1935.)

**Bailment B b—Evidence held insufficient for jury on issue of garage's failure to use due care to prevent theft of auto entrusted to it.**

While evidence that plaintiff delivered his car to a garage for service furnished by such garage, and that the car was stolen from the garage, makes out a *prima facie* case against the bailee, nothing else appearing, where the bailee's evidence in rebuttal is uncontradicted and shows that at the time of the theft the car was parked inside the garage, that attendants were about, and that it was stolen by a stranger, whose presence in the garage would not necessarily excite suspicion, and that the keys were in the car in order to move it about in the performance of the service required, it also appearing that all parties expected plaintiff to return for the car in a short period of time, the evidence fails to show failure on the part of the bailee to use reasonable care for the preservation and protection of the automobile, and his motion as of nonsuit in the bailor's action should be allowed.

CLARKSON, J., dissenting.

CIVIL ACTION, before *McElroy, J.,* at May Term, 1934, of FORSYTH.

The plaintiff was the owner of a Ford automobile which he had purchased from the defendant. The pertinent facts disclosed by plaintiff's testimony are as follows: "I traded for the car with Mr. DeTamble, personally, out at his home on Tuesday night, and he told me to bring it back the next day that they would wash it, grease it and fix it up for me. . . . I took it back Saturday morning and left it at the defendant's place of business to have it washed and greased. I drove the

SWAIN *v.* MOTOR CO.

car in their place of business and asked Mr. Hunter, the man who checks cars in and checks them out, where to put it. He told me to drive it back inside and leave the keys in it, for he had to take it up on the next floor to the wash-pit. I did leave the keys in the car. . . . About eleven o'clock on the Saturday that I left the car there, Mr. Hunter called me on the phone and said somebody had stolen my car. . . . It was about eight o'clock on Saturday morning that I left my car at the Twin City Motor Company, and they notified me it was stolen about eleven o'clock that morning, about three hours after I had left it there. . . . The Twin City Motor Company building has three floors, including the basement, and I left my car on the first floor, with the garage. . . . When Mr. Hunter called me to tell me my car had been stolen, he said he saw a fellow standing out there looking at the cars, leaning up against the wall. . . . He said he took notice of him and then went on to doing something to another car, and saw him go out the door; that he like to hit a fellow, he went out the door so fast. . . . Mr. Hunter told me he saw a fellow with a light over-coat on, well dressed, leaning up against the wall, looking at the cars, and said when he went to turn his back to him and do something else, he saw him go out with my car." There was further evidence that the doors of the garage were open for patrons to come in, and that no special employees or watchmen were placed at the entrance.

Hunter, a witness for defendant, testified that when plaintiff left his car in the garage "we greased the car and sent it upstairs to have it washed. The boy washed it and brought it downstairs about a quarter to eleven, or something like that. I was busy around there waiting on people and I saw a man standing there, a little larger than I am, a nice-looking fellow. I told him I would wait on him in just a few minutes and went ahead doing what I was doing, and the next thing I knew . . . I heard a noise going out the door. I looked up and the car was going out as fast as it could go. . . . There were five or six people in the department where Mr. Swain's car was stored at the time it was taken out and there were a number of other cars in there. The place was full, six or eight cars in front, and the man just had room to drive Mr. Swain's car out. Mr. Swain's car was parked about 100 feet from the door, about the center of the building. . . . There was nothing unusual about the conduct or appearance of the person whom I had seen standing in the garage and who drove Mr. Swain's car out. . . . He was nice looking, well dressed, seemed to be about twenty-eight years old. Strangers frequently come in the garage to have work done on cars. . . . I often have to let people wait while I wait on other customers. . . . There was nothing said about leaving the keys, but he had to leave the keys in the car or we couldn't move it up

to the next floor to wash and grease it. . . . . The car was left with the keys in it. It was between ten-thirty and eleven o'clock that the man whom I have described came in. . . . The car was backed up against the wall with the side towards the doors of the building."

The following issues were submitted to the jury:

1. "Did the plaintiff deliver to the defendant the automobile described in the complaint on or about 20 January, 1934, for the purpose of having same serviced by the defendant, as alleged in the complaint?"

2. "Was the automobile described in the complaint stolen from the place of business of the defendant, as alleged in the complaint?"

3. "Did the defendant exercise reasonable care for the preservation and protection of the automobile described in the complaint?"

4. "What amount of damage, if any, is the plaintiff entitled to recover of the defendant?"

The parties consented that the first and second issues should be answered "Yes." The jury answered the third issue "No," and the fourth issue "$250.00."

*Slawter & Wall for plaintiff.*
*Parrish & Deal and Calvin Graves, Jr., for defendant.*

BROGDEN, J. The parties having agreed that the car of plaintiff was left in the garage of defendant for washing and greasing, and that the same was stolen, the question of law to be considered is: What duty does the owner and operator of a garage owe to a customer with reference to the theft of the property by a third party while in the possession and under the control of such garage owner?

The various aspects of the liability of garage owners for theft of automobiles of customers may be found in 15 A. L. R., 681; 65 A. L. R., 431, *et seq.* The general principle governing liability as pronounced in this State is contained in *Beck v. Wilkins-Ricks Company,* 179 N. C., 231, 102 S. E., 313, as follows: "The defendant, as bailee, assumed liability of ordinary care for the safe-keeping and the return of the machine to the bailor in good condition. The bailee did not assume liability as insurer, and therefore did not become liable for the non-return of the property in good condition, if he observed the ordinary care devolved upon him by reason of the bailment. If the machine had been injured, or stolen, or destroyed by fire while in his custody, the defendant would not be liable if such care had been observed. On the other hand, the mere fact that the property had been destroyed by fire or stolen did not absolve him from responsibility, any more than he would have been absolved if it had been injured in his custody, unless he had shown that he had used the care required of him by virtue of his bailment.

. . . The rule adopted in the more modern decisions is that the proof of loss or injury established a sufficient *prima facie* case against the bailee to put him upon his defense. Where chattels are delivered to a bailee in good condition and are returned in a damaged state, or are lost or not returned at all, the law presumes negligence to be the cause, and casts upon the bailee the burden of showing that the loss is due to other causes consistent with due care on his part." See *Hanes v. Shapiro,* 168 N. C., 24, 84 S. E., 33; *Hutchins v. Taylor-Buick Company,* 198 N. C., 777, 153 S. E., 397.

Practically all courts are in accord upon the proposition that if the owner of an automobile carries it to a garage in good condition, for service furnished by such garage, and thereafter such bailee fails to return it, or returns it in a damaged condition, he makes out a *prima facie* case, nothing else appearing, and is therefore entitled to have the jury determine the proper issues. But, suppose it should appear from the plaintiff's evidence, or if the fact was uncontroverted, that while in such garage the car was struck by lightning or the employees of the garage were held up by an armed highwayman and the car was taken from the custody of the bailee, who was otherwise exercising ordinary care, it would hardly be supposed that under such circumstances the law required the solemn formality of submitting issues upon such admitted facts.

In the case at bar there is no dispute as to the fact of theft. It is not controverted that the car was parked within the garage, 100 feet from the door, and that there were attendants in and about the garage at the time. Consequently, the only fact upon which negligence could be based was the leaving of the keys in the car. In this connection it must be observed that the car could not be moved without the keys, and that the leaving of the keys was not only essential to rendering the service requested, but for moving the car in case of fire and other emergency in the garage. Furthermore, it was known by all parties that the car was to remain in the garage for a short period of time.

Interpreting the evidence with that degree of liberality required in motions of nonsuit, no evidence of actionable negligence appears in the record, and the motion for nonsuit should have been granted.

Reversed.

CLARKSON, J., dissents.