GRADY ROOSEVELT DELLINGER v. HAROLD VAUGHN BRIDGES AND PIEDMONT MOTORS, INC., DEFENDANTS, AND AARON HAMPTON COOKE AND GASTONIA TRANSIT COMPANY, ADDITIONAL DEFENDANTS.

(Filed 20 March 1963.)

1. **Bailment § 1—**

Delivery of possession of an automobile by an owner to a garage for repairs creates a bailment for mutual benefit.

2. **Bailment § 3—**

A bailee for hire is not an insurer but is liable for his failure to return the property in good condition only when such failure is due to ordinary negligence.

3. **Same—**

Proof of delivery of property to a bailee for hire and failure of the bailee to return it in good condition makes out a *prima facie* case of actionable negligence against the bailee, but does not shift the burden of proof on the issue of negligence, which remains on the bailor throughout the trial.

4. **Same; Automobiles § 41g— Evidence of negligence in entering intersection in front of approaching vehicle held for jury.**

Evidence tending to show that bailee's driver, in entering an intersection to make a left turn, was struck by a bus approaching along the intersecting street from his left and making a left turn, *held* sufficient to be submitted to the jury on the issue of the individual driver's negli-

gence in failing to keep an adequate lookout and in driving into the
intersection so nearly in front of the approaching bus that a collision
could not be avoided, and *held* further, not to rebut the *prima facie* show-
ing of negligence on the part of the bailee in failing to return the car
in good condition, even though the evidence showed that the bus, in turn-
ing left, encroached some three or four feet on its left side of the street.

APPEAL by plaintiff from *Riddle, S.J.,* 13 August 1962 Jury Term of
GASTON.

Civil action to recover damages for injury to an automobile, for
loss of its use, for expenses incurred for other transportation, and for
finance charges due on the automobile to Universal C.I.T.

Plaintiff brought his action against Piedmont Motors, Inc. — here-
after called Piedmont—and Harold Vaughn Bridges alleging that his
automobile was damaged by the negligence of Bridges acting as an em-
ployee and agent of Piedmont within the scope of his employment.

Piedmont and Bridges filed a joint answer admitting that at all times
complained of Bridges was an employee and agent of Piedmont acting
within the scope of his employment, and denying any negligence on
their part. In their answer they alleged a cross action against Gastonia
Transit Company and Aaron Hampton Cooke, by virtue of the pro-
visions of G.S. 1-240, wherein they averred that the damage to plain-
tiff's automobile was caused solely by the negligence of Cooke, an
agent and employee of Gastonia Transit Company acting within the
scope of his employment, but if they were negligent, then the damage
to plaintiff's automobile was caused by the joint and concurring negli-
gence of Gastonia Transit Company, Cooke and themselves, and
Gastonia Transit Company and Cooke should be made parties defend-
ant as joint tort-feasors and required to contribute to any damages
plaintiff may recover against them.

The record contains no order making Gastonia Transit Company
and Cooke parties defendant, but the record does contain a written
motion by them to dismiss the cross action, and an order signed by
a special superior court judge on 15 January 1962 denying the motion.
The record also contains a joint answer by Gastonia Transit Company
and Cooke denying any negligence on their part.

Plaintiff introduced evidence, Piedmont and Bridges introduced
evidence, and Gastonia Transit Company and Cooke did not intro-
duce evidence. From a judgment of involuntary nonsuit entered at the
close of all the evidence, on motion of Piedmont and Bridges, plaintiff
appeals.

*Horace M. DuBose, III, for plaintiff appellant.*

*Mullen, Holland & Cooke by Philip V. Harrell for Harold Vaughn Bridges and Piedmont Motors, Inc., original defendants, appellees.*

*No counsel for Aaron Hampton Cooke and Gastonia Transit Company, additional defendants, appellees.*

PARKER, J.   Plaintiff's only assignment of error is the judgment of involuntary nonsuit.

Plaintiff's evidence shows:

A few days prior to 9 September 1960 he delivered his 1960 Mercury automobile to Piedmont for a six months checkup and to have a broken rear window replaced. Before the work was done someone in plaintiff's family called up Piedmont and asked that the automobile be returned as it was needed. When Piedmont was returning the automobile to plaintiff's home as requested, it was wrecked on its left front. After the wreck it was returned to Piedmont. He could have gotten his automobile back in its wrecked condition, but he did not want it. It would seem that the wrecked automobile was taken by Universal C.I.T. in a court proceeding.

The original defendants introduced evidence. This is a summary, except when quoted, of the testimony of Harold Vaughn Bridges, one of the original defendants, as to a collision between plaintiff's Mercury and a bus of Gastonia Transit Company driven by Aaron Hampton Cooke:

*On direct examination:*   About 5:15 o'clock p.m. on 9 September 1960 he, an automobile mechanic working for Piedmont, was driving plaintiff's Mercury east on East Davidson Street in the city of Gastonia on his way to deliver the automobile to plaintiff's home. When he came up to the intersection of East Davidson Street with Broad Street, he stopped on his right side of the street 15 to 18 feet from the edge of Broad Street, looked south on Broad Street, and saw a bus of Gastonia Transit Company about 200 to 300 feet away down Broad Street approaching the intersection at a speed of about 15 to 20 miles an hour. He then looked north up Broad Street to see if it was clear, and when he looked back the bus was right on his side, and then there was a collision between the bus and the Mercury. After the collision the bus was straight in the street about three to five feet over on his side of the street. After the collision Cooke, the driver of the bus, told him at the scene, he didn't see him, the post between the windshield and the mirror blocked his view. In the collision the left front bumper, grille, fender, hood, and radiator of the Mercury were mashed: there was no damage to its right side or rear. There was a "yield right of way" sign on North Broad Street.

*Cross examination by plaintiff:* He doesn't know whether or not the bus had a left turn signal on. He didn't look to see whether the bus was going to turn left. When he saw the bus 200 to 300 feet away from the intersection, he didn't bother to look at it anymore until a few seconds before the collision.

*Cross examination by the additional defendants:* He was planning to turn left to go up Broad Street. East Davidson Street is about 30 feet wide from ditch to ditch—the pavement about 20 feet wide. "I can't explain how it damaged the left front of the car I was driving and the left front of the bus if it was headed directly into my lane.* * * I don't remember testifying to anything about my saying that I had started off. Now, I believe I did say I wouldn't deny it— that I told somebody that."

*Recross examination by plaintiff:* "I did say it was shorter to make a left turn, and that is the reason I stopped 20 feet back. No, sir, my car was not pointed in a northeasterly direction. That's right, I was going the shortest way around the intersection.* * *I said he was some 3 to 5 feet over on my side of the road. If I had been watching the bus all the time, I could have gotten over on the side of the road. I wouldn't be sure that the bus cleared the intersection before the collision occurred. The front of the bus had gotten through the intersection at the time of the collision. I don't know about the back."

Willis Cantrell, a city policeman and a witness for the original defendants, arrived at the scene of the wreck about 15 minutes after it occurred. At that time the front end of the bus was about 50 feet from the intersecting line of North Broad Street and on the Mercury's side of the traveled portion of East Davidson Street. The Mercury was about 60 feet from the same intersecting line. He saw glass, dirt, and debris about three feet on the south side of the center of East Davidson Street. The left front of the Mercury was damaged. The left front of the bus, the paneling, and all under the windshield were pushed back. Cantrell, without objection, testified on cross examination by the additional defendants: "The driver of the bus told me that the driver of the Mercury was making a left turn* * *he was also making a left turn and they collided there in the intersection."

According to the evidence, Piedmont's possession and control of plaintiff's automobile was that of bailee, under a bailment for the mutual benefit of plaintiff, the bailor, and itself, the bailee. Consequently, Piedmont's duty was to exercise due care—it is not an insurer—and its liability for the safe return of plaintiff's automobile turns upon the presence or absence of ordinary negligence. *Insurance Co. v. Motors, Inc.,* 240 N.C. 183, 81 S.E. 2d 416; *Hutchins v. Taylor-*

*Buick Company,* 198 N.C. 777, 153 S.E. 397; *Beck v. Wilkins-Ricks Company,* 179 N.C. 231, 102 S.E. 313; *Hanes v. Shapiro,* 168 N.C. 24, 84 S.E. 33.

Plaintiff's evidence tends to show that he delivered his automobile to Piedmont, that Piedmont accepted it, and thereafter had possession and control of it, and that it failed to return the automobile and had it in its possession and control in a damaged condition. This made out a *prima facie* case of actionable negligence against Piedmont. *Insurance Co. v. Motors, Inc., supra; Hutchins v. Taylor-Buick Company, supra; Beck v. Wilkins-Ricks Company, supra; Hanes v. Shapiro, supra.*

While plaintiff's evidence makes out a *prima facie* case of negligence against Piedmont, the ultimate burden of establishing negligence is on plaintiff, the bailor, and remains on him throughout the trial. *Insurance Co. v. Motors, Inc., supra; Beck v. Wilkins-Ricks Company, supra; Hanes v. Shapiro, supra.*

The original defendants concede that plaintiff's evidence presents a *prima facie* case, but contend that the judgment of involuntary nonsuit is correct, and should be sustained, for the reason that their evidence clearly rebuts plaintiff's *prima facie* case. With that contention we do not agree.

Interpreting the evidence with that degree of liberality required in motions for judgment of involuntary nonsuit, it is our opinion that plaintiff's *prima facie* showing of negligence against Piedmont is not rebutted and overcome by the evidence of the original defendants so as to warrant the sustaining of the judgment of involuntary nonsuit, because the evidence of the original defendants is not clear, plain and unambiguous to the effect that the damage to plaintiff's automobile was proximately caused by the sole negligence of the additional defendants, but permits, although it does not compel, a reasonable inference that Bridges, who was the agent and employee of Piedmont acting within the scope of his employment, did not keep an adequate lookout and drove the Mercury automobile into the intersection of East Davidson and Broad Streets so nearly in front of the approaching bus that a collision could not be avoided, and as a direct result of such negligence the collision between the Mercury and the bus occurred, and further, the nonsuit cannot be sustained as to Bridges because every person is individually responsible for his own acts of actionable negligence. This negligence is alleged by plaintiff against both of the original defendants.

We think the case is controlled by the decisions in *Insurance Co. v. Motors, Inc., supra; Hutchins v. Taylor-Buick Company, supra; Beck*

*v. Wilkins-Ricks Company, supra,* and that the facts here do not bring it within the principle announced in *Morgan v. Bank,* 190 N.C. 209, 129 S.E. 585; *Swain v. Motor Co.,* 207 N.C. 755, 178 S.E. 560.
  The judgment of involuntary nonsuit entered below is
  Reversed.