278

Sheila SCHLAMOWITZ, Plaintiff,

v.

PINEHURST, INC., and Pinehurst Driving and Training Club, Inc., John Edmunds, d/b/a Edmunds Stable, Defendants.

Civ. No. c-174-R-63.

United States District Court
M. D. North Carolina,
Rockingham Division.

May 7, 1964.

———◆———

Yarborough, Blanchard & Tucker, Raleigh, N. C., for plaintiff.

Stephen Milliken, Smith, Moore, Smith, Schell & Hunter, Greensboro, N. C., Boyette & Brogden, Carthage, N. C., for defendants.

HAYES, District Judge.

Plaintiff's cause of action is based on the claim that the three defendants were bailees for hire of two race horses which were destroyed when Barn #4 at Pinehurst was burnt on the night of Jan. 3, 1962, about 1 a. m.

There was evidence tending to show there were 14 stables in this barn and a room in each end for a groom, no groom was in the barn. A night watchman employed and paid by Pinehurst, Inc. was required to visit each of the 10 to 12 barns every hour and a half and punch time clock; he was at this barn about 30 minutes before the flames were discovered at the center of the barn coming out of the roof. Help was called but the barn and its 14 horses were destroyed.

Plaintiff employed defendant Edmunds to take charge of her two horses, feed,

care for and train them, carry them and race them at various race tracks and in November 1961 to take them from Roosevelt Race Track in New York to Pinehurst for wintering them. She paid him an agreed salary plus 10% of the earnings by the horses at the races. He submitted her a bill at the end of each month to cover the expenses incurred for the maintenance of the horses which was paid. He had complete custody and control of the horses and was a bailee for hire.

Pinehurst, Inc. conducts a nationally known winter resort at Pinehurst, N. C. and strives to provide various sports for the enjoyment of its guests. It built two race tracks and several barns on its premises, each barn being supplied with a room for a groom to look after the horses. In 1952 it executed what purports to be a lease of these premises to Pinehurst Driving and Training Club, Inc., hereafter referred to as Training Club; for a period of forty years on payment of one dollar annually. There is evidence tending to show that the Training Club is no more than a mere Corporate Shell and agent of Pinehurst, Inc., and that the so-called lease is no more than a sham to insulate Pinehurst against damages in the operation of the tracks and barns.

The creation of the Corporate Training Club was to promote the interests of Pinehurst, Inc. It was the moving cause for the new corporation and reserved the power to approve the by laws and to prevent the selection of a director or to amend by laws except on its approval. A charge of $60.00 per stall per season was exacted, $10.00 of which was paid Pinehurst, Inc., for supplying water and lights. One of its officers was made a director of the Training Club. Pinehurst employed and paid the entire salary of S. H. Sledge who was head of a division embracing the race tracks and barns. He was the titular secretary and manager of the Training Club. He made the arrangements with Edmunds for storing the plaintiff's horses in the barns, knowing Edmunds was the agent and plaintiff the owner of the horses. Pinehurst, Inc., employed a night watchman and other help in connection with the race tracks and barns. The evidence indicates the Training Club maintained no office or kept records. All invoices were sent out in the name of Pinehurst, Inc.; they were collected and disbursed by it. Although Pinehurst, Inc. was to be compensated with 5% for the book work, this made no difference because Training Club wound up each year with a deficit which Pinehurst paid off. There was ample evidence from which the jury could find Training Club was a mere agent or alter ego of Pinehurst, Inc. and that its acts were the acts of Pinehurst, Inc.

It appears from the foregoing statement that the three defendants were in possession and control of plaintiff's horses which imposed against each of them the duty to exercise ordinary care for the protection and preservation of the bailment.

At the close of plaintiff's evidence and at the close of all of the evidence each defendant moved for a judgment of involuntary nonsuit and for a directed verdict in its favor. The Court reserved its ruling under Rule 50(b) and submitted the issues to the jury. Its verdict found each defendant guilty of negligence proximately causing the damage and assessed her damages at $11,800.00. The case is now before the court to sustain the motions and for judgment in favor of defendants notwithstanding the verdict.

This is a diversity case in which we are required to apply the substantive law of North Carolina. It is well settled in this State that a bailee for hire or mutual benefit owes the bailor ordinary care to protect the bailment and upon proof that it has been destroyed while in his possession constitutes sufficient evidence to take the case to the jury. Falls v. Goforth, 216 N.C. 501, 5 S.E.2d 554 and Orrell v. Wilmington Iron Works, Inc., 185 F.2d (4th Cir.) 181.

■ If the evidence shows conclusively, or if plaintiff admits, bailee was not negligent an involuntary nonsuit should be granted.

(1) Sawyer v. Wilkinson, 166 N.C. 497, 82 S.E. 840, L.R.A.1915B, 295 (where a mule was burned in bailee's barn but it was admitted defendant was not negligent. This has been referred to and distinguished in several later cases.);

(2) Morgan v. Citizens' Bank of Spring Hope, 190 N.C. 209, 129 S.E. 585, 42 A.L.R. 1299 (where bonds were stolen from lock boxes in the Bank's vault which was burglarized without fault of the Bank);

and (3) Swain v. Twin City Motor Co., 207 N.C. 755, 178 S.E. 560 (where all the evidence established conclusively that the bailment was stolen without the fault of bailee.)

Where the evidence is in dispute a jury question arises according to the great weight of North Carolina cases among which are Hanes v. Shapiro & Smith, 168 N.C. 24, 84 S.E. 33 (where a piece of furniture was destroyed by fire and an able opinion by Justice Walker); Beck v. Wilkins-Ricks Co., 179 N. C. 231, 102 S.E. 313, 9 A.L.R 554, opinion and review of bailment cases by C. J. Clark where auto was destroyed by fire); Hutchins v. Taylor-Buick Co., 198 N.C. 777, 153 S.E. 397 (where a stored car in bailee's garage was burned but other cars not damaged, opinion by C. J. Stacy also reviewing bailment cases); Falls v. Goforth, 216 N.C. 501, 5 S.E.2d 554 (a mule died from exhaustion,. opinion by C. J. Stacy); Millers Mutual Insurance Ass'n of Ill. v. Atkinson Motors, 240 N.C. 183, 81 S.E.2d 416 (where only one car burned out of many in garage as in Hutchins v. Taylor-Buick, supra, able opinion by Justice Bobbitt and Dellinger v. Bridges, 259 N.C. 90, 130 S.E.2d 19 opinion by Justice Parker.

■ The instant case is governed by Hutchins v. Taylor-Buick, supra and Millers Mutual Insurance Ass'n of Ill. v. Atkinson Motors, supra. Hence the motions for nonsuit and a directed verdict should be denied as well as the motion for a judgment N. O. V.

■ The court can look behind the form of Corporate existence as well as a lease and where the facts warrant it can disregard the Corporate Shell and hold the real party accountable. Where a Corporate Shell merely functions as an agent or servant of another Corporation the court will hold the latter liable for the acts of its agents. The jury had ample evidence to find the training corporation was a mere agent of Pinehurst, Inc. It is not to be held immune from damages by the intervention of the Corporate Shell. Terrace, Inc. v. Phoenix Indemnity Co., 243 N.C. 595, 91 S.E.2d 584; 13 Am.Jur. Sec. 8; Barbour v. Thomas, 86 F.2d (6th Cir.) 510; Felsenthal v. Northern Assurance Co., 1 A.L.R. 602 and annotation 610 at pages 612 and 613. All three defendants occupied the role of bailee and each owed the duty of ordinary care to protect plaintiff's property. 8 Am.Jur. 2d sec. 244.