## M. B. HAYNES ELECTRIC CORPORATION v. JUSTICE AERO COMPANY.

### (Filed 15 January, 1965.)

**1. Bailment § 1—**

Evidence and allegation to the effect that plaintiff turned over possession of his airplane to defendant for repairs is sufficient to establish the relationship of bailor and bailee in regard to the airplane while in defendent's control or possession.

**2. Bailment § 3—**

The bailee is not an insurer, but is required to exercise ordinary care to protect bailor's property against loss, damage or destruction, and to return the property to bailor in as good condition as when he received it.

**3. Same—**

Plaintiff's evidence to the effect that when he turned over his airplane to defendant for repairs of the radio the airplane was in good condition and that while the plane was in defendant's possession and control it became damaged, makes out a *prima facie* case of actionable negligence against the defendant in the absence of some fatal admission or confession.

**4. Trial § 23—**

A *prima facie* showing is sufficient to carry the case to the jury but does not affect the burden of proof, which remains on plaintiff throughout the trial to prove his case.

**5. Bailment § 3—**

Plaintiff's evidence was to the effect that he turned over his airplane in good condition to defendant for repair of the radio and that while in defendant's possession the plane was damaged. *Held:* Plaintiff's further testimony that after the damage defendant's agent said that the brake on the plane was faulty does not rebut the *prima facie* case, since it does not establish defendant's contention that the damage was caused by the defective brake rather than defendant's negligence, nor does the fact that plaintiff paid the bill for the repairs preclude recovery when at the time plaintiff advised defendant that the payment was not an acceptance of responsibility for the accident.

APPEAL by plaintiff from *Martin, S. J.,* Regular March 1964 Civil Session of BUNCOMBE.

Civil action for damages for injury to an airplane while in defendant's possession for work on its radio to eliminate engine noise, and also to recover damages for loss of use of said airplane while the damage to it was being repaired.

From a judgment of involuntary nonsuit entered at the close of its evidence, plaintiff appeals.

*Uzzell & DuMont by Harry DuMont and Robert D. Lewis for plaintiff appellant.*

*Meekins, Packer & Roberts by Loren D. Packer for defendant appellee.*

PARKER, J. Plaintiff assigns as error the entry of the judgment of involuntary nonsuit.

Plaintiff's evidence tends to show: Plaintiff corporation maintains its principal office and place of business in Asheville, North Carolina. It owned a 1947 Beechcraft Bonanza airplane, which it operated for business purposes. On 12 April 1961 Marion Burton Haynes, Jr., president of plaintiff, flew this airplane from the airport near Asheville to the Raleigh-Durham Airport. N. E. Cannady, Jr., engineer, vice-president, and manager of plaintiff, was a passenger in the airplane. Haynes landed the airplane at the airport, and taxied it over to the service organization adjacent to the terminal building. Haynes went into the service organization and inquired if they had a radio shop. He was advised that it did not, but that there was a radio shop across the field at the Justice Aero Company, the defendant, which was one-fourth to one-half mile from where the service organization is situate. He and Cannady rented an automobile and drove to the defendant's building. Haynes went inside and spoke with Mr. Justice, who referred him to an employee of defendant, Boiken Roseborough, who was in the rear of the building in defendant's radio shop. He asked Roseborough if he could check the radio in plaintiff's airplane and check out the engine noise, and whether or not this could be done in the next couple of days while he was in Raleigh. Roseborough told him he could check the radio and that he could get the airplane the next day. He told Justice he wanted the airplane fixed. He gave the key to the airplane to Roseborough so he could check the radio, because the radio would not operate in the plane without the key. He told Roseborough where he had left the airplane, gave him its number, and left it to his discretion whether or not the airplane should be moved to defendant's shop.

Plaintiff alleges in his complaint in effect that it delivered its airplane to defendant for repairs. Defendant admits in its answer that "on April 12, 1961, plaintiff delivered to the defendant the said aircraft for the purpose of checking the radio therein, which, as defendant is advised and believes, was picking up motor noise on the flight of said aircraft from Asheville to the Raleigh-Durham Airport."

According to plaintiff's evidence, and according to the allegations in its complaint and the admissions in defendant's answer, the relation of plaintiff and defendant was that of bailor and bailee: defendant in its brief admits this relationship. Under the circumstances here defendant was under a legal duty — it was not an insurer — to exercise

ordinary care to protect plaintiff's airplane against loss, damage or destruction, and to return it in as good condition as when he received it, and liability for any damages to the airplane while in its possession turns upon the question of the presence or absence of actionable ordinary negligence on its part or on the part of its agent. *Dellinger v. Bridges,* 259 N.C. 90, 130 S.E. 2d 19; *Insurance Co. v. Motors, Inc.,* 240 N.C. 183, 81 S.E. 2d 416; *Vincent v. Woody,* 238 N.C. 118, 76 S.E. 2d 356; *Beck v. Wilkins,* 179 N.C. 231, 102 S.E. 313; *Hanes v. Shapiro,* 168 N.C. 24, 84 S.E. 33.

Plaintiff's evidence also tends to show the following: When Haynes delivered the airplane to the defendant, "it was in fine performing condition; the wings were in fine condition; the brakes were working fine." About 5:15 p.m. on the next day Roseborough told him over the telephone the airplane had been in a collision. On the following day, April 14, he went to defendant's place of business and saw plaintiff's airplane parked there. He testified: "When I saw the plane on April 14, 1961, it was obvious it had been in a collision, the propeller was damaged beyond repair, the wing was damaged, and it was a sickening sight to me." Haynes testified: "Mr. Roseborough reported the accident to me and he said that they were taxiing the aircraft back and had an accident. He told me that the man that was taxiing the airplane was not a pilot but was checked out in this type aircraft. When I saw him again he told me that he was operating the airplane on the way back. He said that the plane had been taken to Justice Aero and that an A & E mechanic had taken it over." He further testified: "After the accident they said that the brake was faulty."

N. E. Cannady, Jr., testified: "Mr. Roseborough said that he had been taxiing the plane back to the parking area and that it had gotten away from him and hit a tie-down rope and had swung right into the tripacer. * * * He said that the brakes had failed him when he tried to put on the left rud — (witness interrupts self) I mean left brake that it had failed him. * * * He said that there was some wind at the time, I don't remember exactly what he said pertaining to the wind but he said there was some wind at the time. * * * He said he had taxied it back into the — after someone had brought it over the previous night and had parked it that he had then taxied it from his area over to the tie-down area to be brought back the next morning to do some work on it. * * * He simply said, I mean he said that on his way when he was taking the plane back it had got away from him as he tried to apply the left brake to straighten the plane out that it caught on the tie-down rope and swung into a tripacer damaging the tripacer and this plane."

Plaintiff's evidence tends to show that it delivered its airplane to defendant in fine performing condition, with its wings in fine condition, and its brakes in fine working order, for repairs to its radio which was picking up motor noise in flight, that defendant accepted it for the purpose of checking and repairing its radio, that thereafter defendant had possession and control of it, and that the next day defendant had it in its possession and control in a damaged condition. This made out a *prima facie* case of actionable negligence against defendant, and in the absence of some fatal admission or confession, as against a demurrer to the evidence, or motion to nonsuit, a *prima facie* showing carries the case to the jury. *Dellinger v. Bridges, supra; Insurance Co. v. Motors, Inc., supra; Vincent v. Woody, supra; Wellington-Sears Co. v. Finishing Works,* 231 N.C. 96, 56 S.E. 2d 24; *Oil Co. v. Iron Works,* 211 N.C. 668, 191 S.E. 508; *Hutchins v. Taylor-Buick Co.,* 198 N.C. 777, 153 S.E. 397; *Beck v. Wilkins, supra; Hanes v. Shapiro, supra.*

Plaintiff's evidence further shows: After the airplane was damaged, Haynes instructed defendant to repair it and fix anything needing repair. Defendant kept the airplane in making these repairs about three months. Plaintiff paid defendant for such repairs. But in paying for such repairs, Cannady told Mr. Justice: "[T]hat the payment of the bill didn't constitute our accepting any responsibility of the accident and we intended to pursue the legal liability of his responsibility for the accident." Its evidence also tends to show damages for loss of use of its airplane while defendant was repairing it.

Defendant contends that the judgment of compulsory nonsuit should be sustained, for the reason that plaintiff's evidence rebuts its *prima facie* case against defendant, in that it affirmatively and clearly and unambiguously shows either that the damage to its airplane occurred in a manner not attributable to defendant's negligence; or that defendant exercised the requisite care in all that it did with respect to the airplane, so that regardless of the manner of occurrence of the damage to the airplane, it could not have been caused by any negligence on defendant's part. With that contention we do not agree.

Interpreting plaintiff's evidence with that degree of liberality required in motions of nonsuit, we think that plaintiff's evidence makes out a *prima facie* case of actionable negligence against defendant, which its evidence does not affirmatively, clearly and unambiguously rebut, that on the facts in the instant case decision on the motion for nonsuit is controlled by the decisions in *Dellinger v. Bridges, supra; Insurance Co. v. Motors, Inc., supra; Wellington-Sears Co. v. Finishing Works, supra; Oil Co. v. Iron Works, supra; Hutchins v. Taylor-Buick Co., supra; Beck v. Wilkins, supra;* and that the facts here are

easily distinguishable from the facts in *Swain v. Motor Co.*, 207 N.C. 755, 178 S.E. 560; and in *Morgan v. Bank,* 190 N.C. 209, 129 S.E. 585.

While plaintiff's evidence makes out a *prima facie* case of negligence against defendant and is sufficient to carry the case to the jury, the ultimate burden of proof of establishing actionable negligence against defendant is on plaintiff, and remains on it throughout the trial. *Dellinger v. Bridges, supra; Insurance Co. v. Motors, Inc., supra; Speas v. Bank,* 188 N.C. 524, 125 S.E. 398; *Beck v. Wilkins, supra; Hanes v. Shapiro, supra.* What is said in *Insurance Co. v. Motors, Inc., supra,* is relevant here: "While it is not required, in the circumstances of this case, that the plaintiffs establish the specific negligent act or omission proximately causing the loss or damage, it is incumbent upon the plaintiffs to satisfy the jury by the greater weight of the evidence that the loss or damage was caused by negligence on the part of the defendant."

The judgment of compulsory nonsuit was improvidently entered and is

Reversed.