The plaintiff alleges that he purchased a lot of furniture from the defendant with a warranty for twelve months against defects as to workmanship and material. Among this furniture was a sideboard, for which he paid about $177. The furniture was delivered, and about thirty days after its receipt, and before the defects appeared, the plaintiff paid the purchase price for all of the furniture. Within a year, however, defects, both as to workmanship and material, did appear in one piece of the furniture purchased, viz., the sideboard. The defendants were notified of these defects, and demand was made upon them to make the sideboard conform with their warranty. The defendants requested the plaintiff to ship the sideboard to their factory at Norfolk, Virginia, where it could be repaired. In accordance with their request, the sideboard was shipped to them, in order to give them an opportunity to remedy the defects, and while they were at work on the furniture to remedy the same, their place of business, together with the sideboard, was totally destroyed by fire. The plaintiff then made demand upon them for his property, or that they should pay him back the amount of (26) money which he had paid them for this defective piece of furniture. This demand was refused, and the plaintiff brought this action for money had and received to his use. He contends that this furniture was bought with express warranty as to workmanship and material, that there was a breach of the warranty, in that this sideboard was defective, both as to workmanship and material; that the defendants, upon his notice to them of the defects and the demand of plaintiff that it be repaired, requested that the sideboard be returned to them in order that they might have an opportunity to remedy these defects and make good their warranty, and while it was in their possession it was destroyed by fire. Upon these facts he contends that he had his election to sue in tort, or to waive the tort and sue on contract for money had and received. He elected to sue on the warranty, and alleges that the defendant is indebted to him for money had and received to his use to the amount which he had paid for this sideboard. He says that the contract of warranty was a collateral undertaking on the part of the seller as to the quality of the subject of sale, and upon a breach of this collateral undertaking a cause of action arose to the plaintiff, and when the property was returned to the defendants, in compliance with plaintiff's demand and at their request, in order to permit them to comply with their contract and to make good their warranty, the plaintiff did not in any wise waive his rights to sue on the warranty, or, at his election, to sue for money had and received. *Page 84 
The following issues were tendered by the defendants, as the proper and only ones arising in the case:
"1. Is the plaintiff damaged by the negligence of the defendant in the loss of the sideboard in controversy?
"2. What damage is plaintiff entitled to recover?"
The court declined to submit these issues, and defendants excepted.
The jury rendered the following verdict upon the issues submitted by the court, and to which defendants duly excepted:
1. Did the defendants warrant the sideboard in question to be of first-class material and constructed in a workmanlike manner, as alleged? Answer: "Yes."
2. Was there a breach of said warranty by the defendants? Answer: "Yes."
3. What damage, if any, has the plaintiff sustained by reason of such breach? Answer: "$177."
Judgment and appeal by defendants.
The case was tried below upon the wrong theory. When the sideboard was found to be defective in construction and material, the plaintiff could have stood upon his rights, under the warranty, and recovered his damages. But it was a question of election, and he chose to waive his right to sue upon the express covenant of warranty, and to allow this defendant to make good his warranty and to satisfy any damages that might have been recovered thereon, by repairing or restoring the sideboard so as to make it correspond with the thing warranted. It is such a manifest principle of justice and right, that a man, even in the ordinary affairs of life, should not be allowed to blow hot and cold in the same breath and to avail himself of inconsistent rights, that the attempt to establish the truth of the proposition would be worse than useless. To use a very suggestive phrase of Herbert: "Wouldst thou both eat thy cake and have it?" You cannot take two chances, hoping that if you lose the one, you may gain the other. The moral law forbids it and the technical law (as it is sometimes flippantly called) is also prohibitive of such a course. He cannot give up his warranty for a consideration, and afterwards take it back. Where a person has presented to him an election of inconsistent remedies, he must, once for all, choose between them, and is bound by his choice so made. When the plaintiff sent the sideboard to defendant for reparation, so that it should be made toanswer the warranty, he thereby *Page 85 
waived all right to sue upon the covenant — provided, however, that defendant, being entitled to a reasonably sufficient time and opportunity to do the work and return the article, so as to discharge himself from blame, had really used due diligence and care, under the circumstances of the case, to comply with his undertaking to restore the sideboard to such a state that it would fulfill his contract. Plaintiff contends that there was no waiver of his right to sue upon the warranty by returning the sideboard for repairs, but we think that it is such a clear and unmistakable waiver, upon the conceded facts, as to require no further argument from us to establish this position. He received the sideboard, paid for it, and the title passed thereby from defendants to him. It was not revested in defendants by the return of the sideboard for the purpose of restoration, and we think the learned and able counsel of plaintiff virtually submitted to this view of the transaction when asked the question if such a change of title had taken place. If he did not, it is in law correct, and must, by reason and authority, be so, and could not well be otherwise.
But how does the law stand? We will attempt briefly to review it, with special reference to the facts of this case. According to the classification of the civil law, bailments are of six kinds: (1)Depositum, which is a delivery of goods to be kept for the bailor without recompense. (2) Mandatum, which is a delivery of goods to have (28) some service performed about them by the bailee without recompense. (3) Commodatum, which is a gratuitous loan of goods to be temporarily used by the bailee, and returned in specie. (4) Mutuum, which is a delivery of goods, not to be returned in specie, but to be replaced by other goods of the same kind. At common law such a transaction is regarded as a sale or exchange, and not a bailment. (5)Pignus. A pignus, pledge, or pawn, is a delivery of goods as security for some debt or engagement, accompanied by a power of sale in case of default. (6) Locatio. A locatio, or hiring, is a bailment for reward, and may be of four kinds: (a) Locatio rei, or the hiring of a chattel for use. (b) Locatio operis faciendi, or the hiring of work and labor. (c)Locatio custodiae, or the hiring of care and services to be bestowed on the thing delivered. (d) Locatio operis mercium vehendarum, or the hiring of the transportation of goods.
The above classification is unnecessarily refined. The rights and liabilities of the parties to a bailment, as we shall see, depend primarily upon which one is to receive the benefits of the transaction. The law justly imposes a stricter liability upon the one who is to receive the whole benefit of the bailment than upon one who entered into it solely out of good will and for the accommodation of the other party. *Page 86 
Accordingly, bailments may be divided with reference to the party who is to receive the benefit into three classes, which will include all the principles of the law of bailments. The various kinds of bailments in the Roman classification group themselves naturally under these three heads, and it may be convenient to sometimes use the Roman terms to indicate subdivisions. The classification we adopt is:
The rights and liabilities of the parties to a bailment, as we have said, depend primarily upon which party the bailment is intended to benefit. Bailments may, therefore, fall within these divisions:
(a) Bailments for the bailor's sole benefit, including (1) Depositum and (2) Mandatum.
(b) Bailments for the bailee's sole benefit, including (1) Commodatum.
(c) Bailments for mutual benefit, including (1) Pignus, and (2) Locatio.
These views are well supported by the authorities, and especially by Hale on Bailments, pp. 36 and 37.
The transaction in this case more nearly resembles the locatio custodiae
of the civil law, or the hiring of care and services to be bestowed on the thing delivered, and comes under the head of Locatio in the last classification given above.
(29) The rights and liabilities of the parties to a bailment are primarily determined by the contract and bailment purpose. The following principles, however, are common to all classes of bailments: (a) The subject of the bailment must be personalty. (b) There must be a delivery, actual or constructive, of the property. (c) There must be a voluntary acceptance by the bailee. (d) There must be competent parties. (e) Possession by the bailor is considered as sufficient title to support a bailment. (f) The right of property remains in the bailor, and he may maintain an action to protect it. (g) The bailee is estopped from disputing that the bailor had title at the time the goods were delivered. (h) The bailor must not expose the bailee to danger without warning. (i) The bailee must exercise due care.
The parties may enlarge or diminish their liability by special contract, provided, first, that the contract is not in violation of law or against public policy; second, that the liability of the bailee is not to be enlarged or restricted by words of doubtful import, and, third, that the bailee must exercise perfect good faith at all times. He is always liable for his positive wrong or fraud. It is further required that the bailee must deliver up the property uninjured at the termination of the bailment, or else excuse his inability to do so. Hale on Bailments, pp. 10 and 11. Commensurate care, or due care under the circumstances, is the measure *Page 87 
of the bailee's obligation, in the absence of express contract, no matter what may be the object of the bailment.
In all ordinary classes of bailment losses occurring without negligence on the part of the bailee fall upon the bailor. The bailee's liability turns upon the presence or absence of negligence. In some exceptional kinds of bailments, as in the case of carriers or innkeepers, there is a special liability, approximating that of an insurer, but, generally speaking, there can be no recovery against a bailee for loss or damage to the property, in the absence of negligence.
In Coggs v. Bernard, Lord Holt distinguished as to bailments and divided them into three grades or degrees of negligence. Said he: "In bailments for the sole benefit of the bailor, the bailee will be liable only for gross negligence; in bailments for the mutual benefit of both parties, he will be liable for ordinary negligence; in bailments for the exclusive benefit of the bailee, he will be liable even for slight negligence." This distinction and the consequent distinction into three degrees of negligence has been perpetuated in textbooks and decisions, until it has become so interwoven with the law of bailments that it is impossible to discard it, though it has been frequently, severely, and perhaps, in some respects, justly criticised. It certainly may be misleading, if not properly considered. Negligence may be defined generally as the breach of a duty to exercise commensurate care, and to be actionable it must proximately result in damage. Brewster v. Elizabeth City, 137 (30) N.C. 392. Any omission of the duty to exercise due care, and resulting in damage, ought to impose liability. There is no such thing as excusable negligence which causes a wrong. It is said that gross negligence is "ordinary negligence with a vituperative adjective." It would, perhaps, be more logical to apply the adjective of comparison to the term "diligence" rather than to the correlative term, "negligence." This conception of ordinary and gross negligence seems to have had its origin in the law of bailment, and we may illustrate here. Thus, where the exercise of great diligence is the duty imposed, a slight omission of care — i.e., slight negligence — will be regarded as a failure to exercise commensurate care. Where only slight diligence is the measure of duty, slight omissions do not involve a failure to exercise commensurate care, and therefore there is no negligence. In such a case it is very misleading to say that there is slight negligence, but no liability. When only slight diligence is required, there must be a gross omission of diligence — an omission of almost all diligence — in order to involve as failure to exercise commensurate care, or, in other words, to constitute negligence; for commensurate care in such a case is slight care. Nevertheless, the terms "slight negligence," "gross negligence," and "ordinary negligence" are *Page 88 
convenient terms to indicate the degree of care required; but, in the last analysis, the care required by the law is that of the man of ordinary prudence. This is the safest and best rule, and rids us of the technical and useless distinctions in regard to the subject. Ordinary care, being that kind of care which should be used in the particular circumstances, is the correct standard in all cases. It may be high or low in degree, according to circumstances, but is, at least, that which is adapted to the situation.
It remains to show what is meant by the terms "slight," "ordinary," and "great or extraordinary" diligence or negligence — a task which is by no means an easy one. According to Judge Story, "Slight diligence is that which persons of less than common prudence or, indeed, of any prudence at all, take of their own concerns." By Sir William Jones, slight diligence is to be considered to be "the exercise of such diligence as a man of common sense (and prudence), however inattentive, takes of his own concerns." It is probably safe to say that the diligence shown in their own affairs by men careless in their habits, and not necessarily prudent by nature, but of ordinary intelligence, is slight diligence. Want of such diligence constitutes great or gross negligence, which has by some been held to amount to fraud, or to be evidence thereof. It may be safely stated, however, that gross negligence, except under unusual circumstances, is not equivalent to fraud, nor does it necessarily raise a presumption of fraud. Ordinarily, diligence may be said to be that displayed in the management of their own affairs by the average (31) business or professional men met with in daily life — men who have the usual amount of common, practical sense in the management of the necessary details of their business, and who are endowed with ordinary prudence and foresight.
In this view of the question, it will be seen that what constitutes ordinary diligence is dependent upon and varies with the facts of each case. In the words of Judge Story, "That may be said to be common or ordinary diligence, in the sense of the law, which men of common prudence generally exercise about their own affairs in the age and country in which they live." As defined by Sir William Jones, it is "the care which every person of common prudence, and capable of governing a family, takes of his own concerns." The standard of ordinary diligence must, of necessity, vary with time and place, since what might be ordinary diligence at certain times and in certain localities might, at different times and at other places, amount to but slight diligence. The influence of custom of business must also be considered in determining what is ordinary diligence, as, in certain trades, disposition may be made of goods by a man of ordinary prudence which, under other circumstances, would certainly be open to the charge of great negligence. Moreover, *Page 89 
what would be the exercise of ordinary care with regard to articles of a certain kind might be far from such with regard to those of a different sort. Where one is wanting in the exercise of ordinary care, he is said to be guilty of ordinary negligence. Great diligence is that care shown in the management of his own business by a man of great vigilance and foresight, and of a prudent nature — one given to exerting unusual skill and care upon his business affairs. Want of it is slight negligence. These statements are supported by Hale on Bailments, pp. 25, 26, and 27.
As has been seen, the obligation to redeliver or deliver over the property at the termination of the bailment on demand is an essential part of every bailment contract. If the bailee fails to do so, he is liable, unless he can show that his inability arises without fault on his part. There is considerable confusion among the decisions in regard to the burden of proof in cases where a bailee is sued for a loss or injury. A line of decisions holds that in cases founded on negligence the burden of proving it affirmatively rests on the plaintiff throughout, and that, when a bailee is sued for a negligent loss or injury, mere proof of the loss or injury does not alone make a prima facie case. But the better opinion, supported by the weight of authority, holds that while the burden of proving negligence rests upon the plaintiff, and does not shift throughout the trial, the burden of proceeding does shift, and that where the plaintiff has shown that the bailee received the property in good condition, and failed to return it, or returned it injured, he has made out aprima facie case of negligence. "When he has shown a situation which could not have been produced except by the operation of (32) abnormal causes, the onus rests upon defendant to prove that the injury was caused without his fault." Res ipsa loquitur. Unless the bailee overcomes this prima facie case by satisfying the jury that the loss or damage was consistent with the absence of fault on his part, the plaintiff may prevail. Where the bailee makes such showing, however, as where it appears that the property was stolen or injured by vis major, the burden of proceeding shifts back to the plaintiff, and he must show that the bailee was negligent in exposing the property to risk of harm, or in failing to avoid the danger after it was known. In other words, the weight of the evidence may be in favor first of one party and then the other, but the burden of establishing the issue in his favor rests on plaintiff throughout. Hale on Bailments, pp. 31 and 32.
We have referred to Mr. Hale's excellent treatise on bailments very liberally, because the law is stated by him so clearly and seems to have such a direct bearing upon the facts of the case as to make the reference very apposite, though a little full. This is somewhat of a new question in this Court, and must be treated at some length in order to state fully *Page 90 
the essential principles. It bears, though, a close analogy to similar doctrines applicable in other branches of the law. Substantially the same views are expressed by other text-writers on the subject, such as Van Zile on Bailments and Carriers, sec. 26, et seq.; Story on Bailments (9 Ed.), ch. 1, secs. 1 to 40; Schouler's Bailments and Carriers, Part I, secs. 1 to 17; 5 Cyc., pp. 162, 163, 164, and 165. It is said in Cyc., supra, that the Roman classification of bailments is usually supplanted by a division with reference to compensation, under which bailments are divided into three kinds only: (1) Bailments for the benefit of both parties; (2) bailments for the sole benefit of the bailor; (3) bailments for the sole benefit of the bailee, and the locatum, or what is denominated generally as a bailment for hire. Judge Story, at section 426 of his 9th Ed., states that if, while the work is being done on a thing belonging to the employer, or after it is finished, but before it is delivered to the employer, the thing perishes by internal defect, by inevitable accident, or by irresistible force, without any default of the workman (as Pothier holds), the latter is entitled to compensation to the extent of the value of the labor actually performed on it, unless his contract imports a different obligation; for the maxim is, Res perit domino. Pothier, supra, further insists that if the workman has employed his own materials, as accessorial to those of the employer, he is in like manner entitled to be paid for them, if the thing perishes before it is completed. The same doctrine seems to have been promulgated in the Roman law, and was applied to the case of a house accidentally thrown down by an earthquake, while in building; and the loss was held to fall wholly on the owner. The following (33) seems to have been deduced by Mr. Bell in his treatise on this subject as the true rules on the subject: (1) If the work is independent of any materials or property of the employer, the manufacturer has the risk, and the unfinished work perishes to him; (2) if he is employed in working up the materials, or adding his labor to the property of the employer, the risk is with the owner of the thing with which the labor is incorporated; (3) if the work has been performed in such a way as to afford a defense to the employer against a demand for the price, if the accident had not happened (as if it were defectively or improperly done), the same defense will be equally available to him after the loss. In this last point, Pothier also agrees with him, and he seems supported by the Roman law. Story on Bailments, sec. 426; 1 Bell Comm., (4 Ed.), 392, 394, and 5th Ed., pp. 456, 458.
But those rules are, of course, subject to the qualification that the bailee is bound, in all proper instances, when intrusted with the bailee's property, to exercise due care with respect to the subject. It is very clear that, at common law, if the thing of the employer, on which the *Page 91 
work is done, and for which materials are furnished, is by accident, and without any fault of the workman, destroyed or lost before the work is completed, or the thing is delivered back, the loss must be borne by the employer, and he must pay the workman a fully compensation for the work and labor already done and materials furnished, although he has derived no benefit therefrom. Thus, where a ship was accidentally destroyed by fire while she was in the dock of a shipwright undergoing repairs, it was held that the shipwright was entitled to full compensation for all his work and labor done and materials found and applied thereto before the loss. But the general rule may be controlled by a special agreement of the parties, as in this case, or by general usage and custom of the trade. Schouler remarks that the fundamental idea of our whole subject is that one whose pains are to go wholly unrewarded ought to be the most lightly bound — a maxim which, however distasteful to the strict moralist, is thoroughly consonant with the teaching of the common law. And since no nice gradation by the amount of recompense is here attempted, bailments at common law may well be grouped under these three heads, as Judge Story himself has admitted: (1) Those for the sole benefit of the party on the bailor's side; (2) those for the sole benefit of the party on the bailee's side; (3) those for the benefit of both parties. In the first two instances the benefit designed is unilateral; in the third, bilateral or reciprocal.
We are to bear in mind that it is not the actual issue of the undertaking, but its intent, by which recompense is to be tested. Under such a classification, the foregoing titles fall readily into place; and the parade of Roman names imposes less readily upon the reader who reflects that there is much the same variety of transactions capable (34) of performance, whether one is to get his reward or serve gratuitously. Schouler's Bailments and Carriers, sec. 14, p. 15. Under the title, "Negligence or Diligence," with regard to bailments, Van Zile, at section 34, thus states the rule in a practical way: "Coupled with the question of benefit is the question of negligence or diligence; for the receiving of benefits brings the requirement of diligence, and the absence to a certain extent excuses negligence. If, for example, the bailee is to receive no compensation and no benefit, and the bailment relation is solely for the benefit of the bailor, a depositum or a mandatum, the law does not require of the bailee so high a degree of diligence as it would in case ofcommodatum, where the benefit is entirely for the bailee, and no benefit whatever to the bailor. And so the duties and liabilities of the bailee, when there is no special contract, depend almost entirely upon the benefit received, and the diligence he has shown or the negligence he is guilty of. If the bailment, for example, is for the sole benefit of the bailor, the *Page 92 
law only requires of the bailee slight diligence, and holds him liable for gross negligence. If for the sole benefit of the bailee, then he is held to high diligence, and liable for slight negligence; if for the benefit of both bailor and bailee, ordinary diligence and ordinary negligence. This is the correct summing up of the doctrines."
Let us apply this rule to our facts. Defendants had given a warranty as to quality of workmanship and material. Plaintiff says he breached it, as the sideboard proved to be defective; but defendant denied this allegation. The parties were, therefore, in controversy, and in order to adjust it, they agreed that, instead of plaintiff suing on the warranty, defendant should place the sideboard in the condition before warranted by him. The settlement of the dispute in this way was sufficient to make the consideration material and reciprocal between the parties, and sufficient to support the contract, just as, at common law, the payment of a part of a debt upon a promise to release or forgive the balance was nudum pactum, but if there was dispute between the parties as to the debt or the amount of it, this constituted a sufficient consideration to support the release of the balance upon a settlement. York v. Westall, 143 N.C. 276.
The bailment was, therefore, for the benefit of both parties, and not solely for that of the bailor or bailee, and consequently the bailee was bound to the use of ordinary care in respect to the thing bailed to him. While the burden was upon the bailor to show the bailee's negligence, the latter knew better than the bailor how the accident happened by which the property was destroyed, or should know, and is called upon to offer proof that the destruction arose from the operation of forces beyond his control or while he was exercising ordinary care for (35) the preservation of the property and in the completion of the work upon it; not that the burden shifts to him, upon proof of the loss, which is prima facie evidence of negligence, but that he should satisfy the jury as to his due care or take the risk of an adverse verdict. Wintringham v. Hayes, 144 N.Y. 1. The prima facie case arising from his failure to return the property, and its destruction, does not forestall the verdict, as the burden of proof still rests upon the plaintiff and he must ultimately satisfy the jury of the existence of negligence; but defendant takes his chances on the verdict if he fails to go forward with proof and thereby prevents the jury from deciding according to theprima facie case; not that they are bound to do so, as the circumstances raising it may satisfy them, without further proof, that in fact there was no negligence, but that they may do so, and if they should so view the evidence, the defendant would lose. S. v. Wilkerson, 164 N.C. 436, and cases cited therein; Sweeney v. Erving, 228 U.S. 233. *Page 93 
This Court said in Henderson v. Bessent, 68 N.C. 223: "The bailment was for the benefit of the parties; so upon the settled distinction the bailee is only liable for ordinary neglect, which does not embrace a case of accidental destruction by fire, without default on the part of the bailee." That is the principle under which this case must be tried, and we cannot adopt the defendant's contention that it was a gratuitous bailment on his part, and he is liable, therefore, only for gross negligence, or, conversely, bound to the use of slight care. Plaintiff released the cause of action on the warranty, in exchange for his promise to repair the sideboard, and the benefit he thereby derived furnished the consideration for his undertaking as bailee.
It would seem that, by the common law, in such a case as this one the workman, regardless of any usage of trade, would not be entitled to any compensation for his labor and material, and that the rule would apply that the thing should perish to the bailor, and the work and material to the mechanic or bailee, if the latter has performed his duty by exercising the care required of him in the possession and preservation of the thing bailed to him for hire. Story on Bailments (9 Ed.), sec. 426b; Gillett v. Mawman, 1 Taunton, 137.
The judge should have tried the case upon the issue tendered by the defendant, and there was error in refusing to do so.
New trial.
Cited: Perry v. R. R., 171 N.C. 163; Ridge v. High Point, 176 N.C. 425;Beck v. Wilkins, 179 N.C. 233; Trustees v. Banking Co., 182 N.C. 303;McDearman v. Morris, 183 N.C. 78; Motor Co. v. Sands, 186 N.C. 737; Morganv. Bank, 190 N.C. 213; Lawshe v. R. R., 191 N.C. 476; Lacy v. IndemnityCo., 193 N.C. 181; Holton v. Indemnity Co., 196 N.C. 351; Watson v.Construction Co., 197 N.C. 592; Hutchins v. Taylor-Buick Co., 198 N.C. 778;Small v. Utilities Co., 200 N.C. 722; Swain v. Motor Co., 207 N.C. 758.
(36)