Ward v. Newell

MORRIS V. WARD, GUARDIAN AD LITEM FOR LAURA A. WARD, MINOR v. OUIDA B. NEWELL AND PRISSY NEWELL, D/B/A TARA FARMS

No. 8310DC254

(Filed 5 June 1984)

1. **Bailment § 1— bailment of horse**

When plaintiff purchased a mare from defendants and the parties agreed that the mare would remain in defendants' custody for a certain period of time because her foal was not yet weaned from her, a bailment was created, and defendant bailees were required to exercise ordinary care in caring for the mare.

2. **Bailment § 3.3— negligence of bailees in permitting mare to become pregnant**

Plaintiff's evidence was sufficient for the jury on the issue of negligence by defendant bailees in placing a mare purchased by plaintiff from defendants in a pasture with a stallion, thereby allowing the mare to become pregnant and making her unsuitable for use as a show horse.

3. **Bailment § 3.1— negligence of bailees in permitting mare to become pregnant—damages—requiring documents to register foal**

In an action to recover damages for the negligence of defendant bailees in placing plaintiff's mare in a pasture with a stallion so that she became pregnant, the trial court erred in ordering defendants to execute documents necessary for the registration of a foal born to the mare where the jury was instructed to deduct the unregistered value of the foal in determining damages to be awarded to plaintiff.

Ward v. Newell

APPEAL by defendants from *Barnette, Judge.* Judgment entered 12 October 1982 in District Court, WAKE County. Heard in the Court of Appeals 8 February 1984.

This is a civil action in which plaintiff seeks to recover damages resulting from the defendants' alleged negligence in placing a female horse purchased by plaintiff in a pasture with a stallion, thereby allowing the mare to become pregnant and making her unsuitable for the purpose for which she was purchased. The evidence tends to show the following facts: On 25 March 1980, the plaintiff Laura Ward, accompanied by her father, went to the defendants' place of business, Tara Farms, and contracted to buy a horse for the price of $1,150.00. Plaintiff paid $200 towards the price of the horse at that time. The horse, Nagasakie Nellie, is a mare and was bought for plaintiff to train and show as part of a 4-H project.

At the time the contract was entered, the mare had a five-day-old foal at her side which was not purchased by plaintiff. Because plaintiff and her family did not have facilities for caring for the foal, who was too young to be separated from the mare, the parties agreed that the mare would be left in the defendants' care and custody for a period of 30 days. It was later agreed that defendants would keep the mare for an additional period of time for which plaintiff paid a boarding fee. On 25 March 1980, defendants offered to re-breed the mare, but plaintiff specifically stated that she did not want the mare bred again because she wanted a show horse.

The mare remained under defendants' care and custody until 17 May 1980 when plaintiff paid the balance of the purchase price and took possession of the mare. At that time, plaintiff was not aware that the mare had been kept in a pasture with a stud or was pregnant. Plaintiff testified that she kept the mare in an enclosed pasture with another mare, and that to the best of her knowledge the mare was never exposed to a stud while she was in her possession. On one occasion shortly after plaintiff took possession of the mare, the mare escaped from the enclosure for a brief period of time. Plaintiff was able to track where the mare had gone and retrieve her. Plaintiff testified that the mare could not have gotten close to any studs while she was loose because there were not any in the vicinity of her family's farm.

---

Ward v. Newell

---

On 22 February 1981, a veterinarian determined that the mare was pregnant. Both plaintiff and her father testified that when defendants were advised of this fact, defendants admitted that their stud was the sire, and asked that plaintiff pay a $200 stud fee for his services. At trial, one of the defendants admitted that after 25 March 1980, the mare had been kept in the same pasture as defendants' stud, and that plaintiff had not been advised of defendants' intention to put the mare to pasture with the stud. On 15 April 1981, the mare delivered a foal. Plaintiff testified that there were no indications of an abnormal pregnancy and that the foal was fully developed when born. Defendant Ouida Newell testified that the normal gestation period for a mare is 336 days. The plaintiff's father, Morris V. Ward, testified that he personally knew the normal gestation period for a horse is between 11 months and 11 months, 10 days.

Plaintiff sought damages for time spent caring for the horse; clothing purchased in anticipation of showing the horse which was not used; medical expenses of the mare before, during, and after delivery; the added cost of feed and other items of care for the foal; the anticipated cost of building a new paddock for the horses; and the anticipated cost of improving the horse stalls. In addition, plaintiff asked that the court order the defendants to execute a breeder's certificate and all other documents necessary for the registration of the foal born to the mare with the American Quarterhorse Association. The jury returned a verdict in favor of plaintiff and awarded damages of $1,800.00. In accordance with the verdict, the court ordered that the plaintiff recover from the defendants the sum of $1,800.00, together with the costs of the action, and that the defendants issue the breeder's certificate requested by plaintiff. Defendants appealed.

*Savage and Godfrey, by David R. Godfrey, for plaintiff appellee.*

*Purser, Cheshire, Manning and Parker, by Joseph B. Cheshire, V and Barbara A. Smith, for defendant appellants.*

WEBB, Judge.

Defendants assign as error the trial court's denial of their motions for a directed verdict and judgment notwithstanding the verdict, contending the evidence was not sufficient to support a

verdict for the plaintiff. On defendants' motions for directed verdict and judgment notwithstanding the verdict, the plaintiff's evidence must be taken as true, and all the evidence must be considered in the light most favorable to the plaintiff, giving him the benefit of every reasonable inference to be drawn therefrom. *See Maganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E. 2d 678 (1977).

[1] When the evidence is considered in the light most favorable to the plaintiff, it shows that on 25 March 1980, plaintiff purchased Nagasakie Nellie; however, it was agreed by the parties that the mare would remain in the defendants' custody for a certain period of time because her foal was not yet weaned from her. At that point, a bailment was created for the benefit of both parties, and the bailees, the defendants, were required to exercise ordinary care in caring for the mare. *See Hanes v. Shapiro*, 168 N.C. 24, 84 S.E. 33 (1915). Ordinary care has been defined as that degree of care which men of ordinary prudence take of their own property of a similar kind under like circumstances. *Id.* The bailees' failure to exercise the required degree of care is negligence. *Id.*

[2] In the instant case, the defendants kept the plaintiff's mare in a pasture with their stallion for over a month-and-a-half even though they were told by plaintiff that she did not want the mare to be rebred. After plaintiff obtained possession of the mare, it does not appear the mare came in contact with any stallions. Assuming that the normal gestation period for a horse is between 11 months and 11 months, 10 days, the mare was probably impregnated sometime between 5 May and 15 May 1980 which was during the time that defendants had custody of her. The defendants argue that there was no competent testimony from an expert witness as to the gestation period for a mare. Ouida B. Newell, a horse breeder, testified the gestation period for a mare is approximately 336 days. We believe this is competent evidence as to the gestation period. In addition, when defendants were told that the mare was pregnant, they admitted that their stud was the sire, and asked that plaintiff pay a stud fee for the stallion's services. We believe this evidence is certainly sufficient to permit the jury to find that the defendants were negligent, and that the plaintiff was damaged by such negligence. Therefore, we find no error in

the court's denial of defendants' motions for directed verdict and judgment notwithstanding the verdict.

[3]   Defendants also contend the trial court erred in ordering them to execute a breeder's certificate and other documents necessary for the registration of the foal born 15 April 1981 with the American Quarterhorse Association. The court instructed the jury that they must deduct from the damages incurred by the plaintiff the present value of the foal. The court further instructed the jury, "[t]he evidence seems to indicate that the foal is presently unregistered and is worth two hundred to four hundred dollars." The court based its instruction on the testimony of the plaintiff and her father, both of whom testified that unregistered, the foal is worth only two to four hundred dollars.

Therefore, the jury deducted only the unregistered value of the foal in determining the amount of damages to be awarded to the plaintiff. Clearly, the foal would be more valuable if it were registered. Defendants argue that the court erred in limiting the setoff amount to the value of an unregistered foal while at the same time ordering defendants to issue documents which would increase the value of the foal significantly because such action results in double compensation for the plaintiff. We agree and hold that the portion of the judgment requiring the defendants to execute a breeder's certificate should be reversed and stricken from the judgment by the trial court. That part of the judgment awarding monetary damages to the plaintiff is affirmed. The judgment of the trial court is

Affirmed in part; reversed and remanded in part.

Chief Judge VAUGHN and Judge JOHNSON concur.