BOBB CHEVROLET, INC. et al., Appellants,

v.

JACK'S USED CARS, L.L.C. et al., Appellees.

[Cite as *Bobb Chevrolet, Inc. v. Jack's Used Cars, L.L.C.,* 148 Ohio App.3d 97, 2002-Ohio-1351.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Decided March 26, 2002.

Baran, Piper, Tarkowsky, Fitzgerald & Theis Co. L.P.A., and Jennifer K. Mason, for appellants.

Caborn & Butauski Co., L.P.A., and David A. Caborn, for appellees.

PAINTER, Judge.

{¶ 1}  Plaintiff-appellant, Bobb Chevrolet, Inc. ("Bobb"), located in Columbus, Ohio, had a business relationship with defendant-appellee, Jack's Used Cars, L.L.C. ("Jack's"), owned by Jack Medlin in Rocky Mount, North Carolina.  Bobb regularly sold used cars to Jack's for resale.  When a shipment of cars was damaged by a hurricane, each believed the other to be liable for the damages. Under North Carolina law, Bobb's claims fail, and we thus affirm the trial court's grant of summary judgment in favor of Jack's.

## I.  A Long Relationship

{¶ 2}  According to the practice that the parties had established, Bobb and Jack's would tentatively agree by phone on a price for some of Bobb's used cars. Bobb would then record the price that they had agreed upon for each particular car, fax that document to Jack's, and ship the cars from Ohio to North Carolina. Once the cars arrived in North Carolina, they would be inspected for acceptance. If the cars did not arrive in the condition that Jack's expected, the price would be renegotiated, or, if no agreement could be reached, then the car or cars not meeting expectations could be returned to Bobb. If the cars were accepted, then

payment from Jack's usually crossed in the mail with title to the cars from Bobb. Nowhere in the process did the parties make an effective choice of the laws that would govern their transactions.

{¶ 3} While this practice apparently served the parties well for a number of years, a shipment of cars was damaged by a hurricane, leaving one party or its insurer responsible for the damages. The cars were delivered to Jack's lot on the afternoon that a hurricane had been forecast for the evening. Despite Medlin's request that the shipper wait to unload the cars until the next day, the driver was understandably eager to unload and leave the area.

{¶ 4} The cars were unloaded onto an elevated portion of the lot. That evening, the hurricane struck, and torrential rains caused severe flooding. The newly arrived shipment of cars from Bobb, along with the rest of Jack's inventory of used cars, was damaged by the floodwaters. Apparently, this was the first time that the lot had flooded, though Jack's had occupied the same location for thirty years.

## II. Contract Claim

{¶ 5} Bobb claimed that, because the cars had been delivered, Jack's owned the damaged cars. Thus, Bobb argued that it was entitled to payment for the cars from Jack's despite the damage, because, as the owner, Jack's bore the risk of loss. Under an alternate theory, Bobb asserted that, if title had not transferred to Jack's, then Jack's was a bailee of the cars and liable for the damage. Jack's responded that it did not own the cars because a successful transfer of ownership had not occurred. Thus, according to Jack's, Bobb owned the cars and bore the risk of loss, and it owed Bobb nothing. As to the bailment, Jack's stated that it was not negligent.

{¶ 6} Bobb and Jack's reciprocal claims concerning the ownership of the flood-damaged cars were rooted in the conflicting laws of their respective states. According to Ohio law, under a valid purchase contract, delivery by the seller to the buyer effectively transfers ownership of a car.[1] But under North Carolina law, a buyer does not own a new car until its title has been successfully transferred from the seller to the buyer.[2]

{¶ 7} Thus, the parties now view the outcome of this case as largely dependent upon determining which of the conflicting state laws concerning the owner-

1. See R.C. 1302.42(B); *Hughes v. Al Green, Inc.* (1981), 65 Ohio St.2d 110, 19 O.O.3d 307, 418 N.E.2d 1355, syllabus.

2. See *Nationwide Mut. Ins. Co. v. Hayes* (1970), 276 N.C. 620, 640, 174 S.E.2d 511, 524; N.C. Gen.Stat. 20–72(b).

ship of the cars is applicable. While we hold that North Carolina law applies, we also note that the outcome would be the same in either state. There was no binding contract for the sale of the automobiles when they were damaged. Bobb had offered to sell the cars to Jack's, but Jack's had not accepted the offer. Even under Ohio law, Jack's would prevail.

{¶ 8}   Both parties moved for summary judgment in the trial court, and the court awarded summary judgment to Jack's, applying North Carolina law to the ownership dispute. The court also held that, even if a bailment had been created by the delivery of the cars, there was no evidence that Jack's had been negligent in its duty to exercise ordinary care. Bobb now appeals, asserting that the trial court erred in its application of North Carolina law to the dispute and that summary judgment was improper since Bobb should have recovered because of both (1) a breach of its purchase contract and (2) the negligence of Jack's in the care of the bailed vehicles. The trial court was correct.

{¶ 9}   We review the grant of summary judgment in favor of Jack's de novo, using the same standard that the trial court applied.[3] Under Civ.R. 56(C), summary judgment for Jack's was appropriate if (1) there was no genuine issue of material fact; (2) Jack's was entitled to judgment as a matter of law; and (3) after construing the evidence most favorably for Bobb, reasonable minds could only have reached a conclusion adverse to Bobb.[4]

{¶ 10}   The parties do not dispute any of the meaningful facts in this case. The initial issue is whether the transaction should be interpreted according to the law of North Carolina or the law of Ohio. Bobb and Jack's agree on the criteria for making that determination. Where the parties have failed to make an effective choice of law to govern a contract, Ohio courts are to decide the issue of the applicable state law by evaluating which state has the most significant relationship to the transaction and the parties by considering the following: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties.[5]

---

3.   See *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243, 1245.

4.   See *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201, 204, citing *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus.

5.   See *Gries Sports Enterprises, Inc. v. Modell* (1984), 15 Ohio St.3d 284, 15 OBR 417, 473 N.E.2d 807, syllabus, adopting 1 Restatement of the Law 2d, Conflict of Laws (1969), Section 188.

{¶ 11} We affirm the trial court's decision to apply North Carolina law, primarily because the final act necessary to make the contract binding on the parties was to have occurred in North Carolina. Bobb offered to sell Jack's some used cars at a certain price. But an offer to sell is not a contract to sell—the recipient of the offer must accept it. Jack's was under no legal obligation to pay Bobb for the cars, and Bobb had no corresponding obligation to forward title to the cars, until they had been physically inspected in North Carolina. Thus, the "place of contracting" for purposes of a choice-of-law analysis was North Carolina.

{¶ 12} We also note that the location of the subject matter of the contract favors North Carolina law. While it is true that the cars started off in Ohio, the damage to the cars and, thus, the event that was the genesis of this case occurred in North Carolina. By contrast, the remaining three criteria are neutral. Each party was expected to perform its respective obligations within its home state. The parties negotiated by phone from within their home states, and neither party was situated in any location other than its home state. We, thus, affirm the judgment of the trial court and hold that North Carolina law governs Bobb's breach-of-contract claim.

{¶ 13} Since the steps necessary to transfer the title for the cars from Bobb to Jack's had not occurred when the cars were damaged,[6] Bobb owned the cars. Further, as we have already held, Jack's was not contractually bound to purchase the cars when they were damaged, and Bobb could not seek to enforce the breach of a contract that had yet to legally bind Jack's. Thus, we affirm the trial court's grant of summary judgment in favor of Jack's on Bobb's breach-of-contract claim.

### III.   Bailment Claim

{¶ 14} Next, we turn to Bobb's alternative claim that Jack's was a bailee for the cars and that Jack's failed to exercise the ordinary care required to protect the cars and to keep them safe. In Ohio, a bailor may sue the bailee in tort for failure to exercise ordinary care or in contract for breach of the bailee's promise to return the property undamaged.[7] It appears that Bobb intertwined the two causes of action in its pleadings.

{¶ 15} We note the alternate claims only for the limited purpose of explaining that, in this case, under either a tort cause of action or a contract

---

6.   See *Nationwide Mut. Ins. Co. v. Hayes* (1970), 276 N.C. 620, 640, 174 S.E.2d 511, 524; N.C. Gen.Stat. 20–72(b).

7.   See *David v. Lose* (1966), 7 Ohio St.2d 97, 98–99, 36 O.O.2d 81, 218 N.E.2d 442, 444.

cause of action, North Carolina law still governs the resolution. As we have already stated, North Carolina has the most significant relationship to the purported contract, and, as for a tort cause of action, "the law of the state where the injury occurred presumptively controls." [8] The injury in this case—the damage to the cars—occurred in North Carolina.

■ {¶ 16} Under North Carolina law, no such dichotomy based on the underlying cause of action exists. A bailee's liability simply depends on the presence or absence of ordinary negligence.[9] A negligence claim may be premised on a tortfeasor's alleged failure to comply with a duty to provide ordinary care. And ordinary care has been defined in North Carolina, as elsewhere, as "that degree of care which men of ordinary prudence take of their own property of a similar kind under like circumstances." [10]

■ {¶ 17} In this case, under extraordinary circumstances, Jack's afforded at least the same care to Bobb's cars as it did to its own inventory. While the record indicates that Bobb's cars were unloaded in an elevated section of the lot—more protected than Jack's own inventory of vehicles—rising floodwaters damaged all of the cars. Further, it would have been difficult for Jack's to have foreseen the danger, since it had been doing business in the same place for thirty years, presumably surviving other hurricanes, without flood damage to its inventory. And it would be unrealistic to expect Jack's to have attempted to move the cars to higher ground, even if such storage had been available, in the midst of a hurricane. So even had a contract for bailment been created, the record does not demonstrate that Jack's was negligent.

{¶ 18} Bobb's assignments of error are overruled, and we affirm the trial court's grant of summary judgment in favor of Jack's, both on Bobb's alternative bailment claim and on Bobb's claim for breach of contract.

Judgment affirmed.

PEGGY BRYANT and PETREE, JJ., concur.

MARK P. PAINTER, J., of the First Appellate District, sitting by assignment.

---

8. See *Miller v. State Farm Mut. Auto. Ins. Co.* (C.A.6, 1996), 87 F.3d 822, 824–825, citing *Nationwide Mut. Ins. Co. v. Ferrin* (1986), 21 Ohio St.3d 43, 21 OBR 328, 487 N.E.2d 568.

9. See *Strang v. Hollowell* (1990), 97 N.C.App. 316, 318, 387 S.E.2d 664, 665–666, citing *Millers Mut. Ins. Assn. of Illinois v. Atkinson Motors* (1954), 240 N.C. 183, 81 S.E.2d 416, and *Terrell v. H & N Chevrolet Co.* (1971), 11 N.C.App. 310, 181 S.E.2d 124.

10. See *Ward v. Newell* (1984), 68 N.C.App. 646, 649, 315 S.E.2d 721, 723, citing *Hanes v. Shapiro* (1915), 168 N.C. 24, 84 S.E. 33. 23, citing *Hanes v. Shapiro* (1915), 168 N.C. 24, 84 S.E. 33.