JOURNAL ENTRY AND OPINION
{¶ 1} Defendants Narcis and Lou Ann Nicula appeal from the judgment of the trial court in favor of plaintiff, Dionise Nicula, in plaintiff's action for fraud, and other claims. For the reasons set forth below, we affirm.
 {¶ 2} Plaintiff obtained a judgment against defendants in a Romanian court which determined that defendants had fraudulently transferred plaintiff's real estate located in Sibiu, Romania, to defendant Narcis Nicula's father, Virgil. The Romanian judgment nullified the transfer and ordered defendants to pay plaintiff's damages. Plaintiff then brought suit against defendants for compensatory and punitive damages in the court of common pleas for fraud, conversion, and unlawful notarization.[1] Plaintiff alleged that defendant Lou Ann Nicula was an employee of plaintiff's former Ohio attorney, and, as such, had access to documents containing his signature, thereby providing him with exemplars for forging his signature. Plaintiff further alleged that defendants forged a "Procura Speciala" or "Special Proxy," akin to a power of attorney, which authorized an individual named Carmelia Damien to sell the parcel and that defendant Lou Ann Nicula acted as the notary for this document. Plaintiff further alleged that Carmelia Damien then sold it to Virgil Nicula.
 {¶ 3} The matter proceeded to a jury trial in December 2003. Plaintiff's evidence demonstrated that plaintiff is the uncle of defendant Narcis Nicula. Plaintiff *Page 4 
emigrated from Romania to the United States, and allowed his brother Virgil, defendant's father, to live rent-free on the property in Romania for several years. Pursuant to a written sales agreement, plaintiff intended to sell the property to Virgil, but because Virgil paid only about one-half of the purchase price, plaintiff did not transfer title to him. Plaintiff learned, however, that the property had been transferred to defendant Narcis Nicula and his brother Razvan upon Virgil's death.
 {¶ 4} Plaintiff introduced exhibit 1, a "Special Proxy," purportedly giving an individual named Camelia Damian power of attorney to transfer the property to Virgil, which would pass to his sons, including Narcis, after Virgil's death. Plaintiff testified that he does not know Camelia Damian and never authorized anyone to sell the property on his behalf. He also denied signing the document. The evidence further indicated that the "Special Proxy" was notarized by defendant Lou Ann Nicula, defendant Narcis' wife. Defendant Lou Ann had been an employee of plaintiff's former attorney, had access to plaintiff's signature, and admitted at trial to frequently and improperly notarizing blank documents or documents after they had already been signed.
 {¶ 5} Plaintiff further testified that, as a result of the forged Special Proxy, the property was transferred out of his name and he was compelled to travel to Romania to hire attorneys there to clear the title of the fraudulent transfer. He incurred costs of approximately $7,000.
 {¶ 6} Plaintiff also presented testimony from handwriting expert Nancy Maxim. According to Maxim, the upper extenders of the signature on the Special Proxy has *Page 5 
a blob of ink at the top of the strokes which is indicative that the strokes were not made in a single fluid movement. The signature on the Special Proxy also has loops whereas plaintiff's known signature is more angular. According to Maxim, and to a reasonable degree of professional certainty, the signature on the Special Proxy was not plaintiff's.
 {¶ 7} Finally, plaintiff's evidence demonstrated that he filed a lawsuit in Romania to assert his rights to the Romanian real estate. Plaintiff introduced the Romanian court's journal entry and officially translated copies setting forth a decision in his favor in which the court concluded that defendants had fraudulently transferred the real estate and nullified the transfer. Plaintiff also testified that a Romanian police investigation revealed that defendants had forged the Special Proxy. A tenant has been paying rent for a portion of the parcel, and plaintiff has not received any of these rental fees.
 {¶ 8} Defendants represented themselves pro se at trial. They denied forging the "Special Proxy" and denied participating in any fraudulent activity. Lou Ann Nicula stated that she sometimes notarized documents where the exact nature of the document was not clear to the person signing it. She also admitted to notarizing documents in blank. She insisted that the Romanian court had not reached a final judgment.
 {¶ 9} The jury found in favor of plaintiff, and the trial court awarded plaintiff $14,329 in compensatory damages plus $10,000 in punitive damages as against Narcis Nicula and $21,480 in compensatory damages, plus $15,000 for punitive *Page 6 
damages as against Lou Ann Nicula. The jury also awarded plaintiff $20,610 for attorney fees. Defendants now appeal, [2] asserting five assignments of error for our review, which we address together and out of order where appropriate.
 {¶ 10} Defendants' first and third assignments of error state:
 {¶ 11} "I. The trial court committed prejudicial reversible error by admitting into evidence and giving deference to improperly authenticated foreign public documents."
 {¶ 12} "III. The trial court committed reversible prejudicial error by admitting documents into evidence in violation of the rule against hearsay."
 {¶ 13} In assignments of error one and three, defendants maintain the trial court improperly admitted evidence. Specifically, they challenge the introduction of plaintiff's exhibits 1, 3, and 5, maintaining they were not properly authenticated. They also contend exhibits 4 and 10 were improperly admitted.
 {¶ 14} A review of the record shows that defendants failed to renew their objection when exhibits 3, 5, and 10 were sought to be admitted. Defendants cannot now raise their admission as error, unless they demonstrate plain error. State v. Smith, 80 Ohio St.3d 89, 107,1997-Ohio-355. See, also, State v. Allen (1995), 73 Ohio St.3d 626, 637. We find no plain error in connection with the authenticity or admission of the challenged evidence. *Page 7 
 {¶ 15} The admission of evidence rests within the trial court's discretion. Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269, 271. Therefore, our review is limited to determining whether the trial court abused its discretion in admitting exhibits 1 and 4. We find it did not.
 {¶ 16} "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. To find an abuse of discretion, this court must find that the trial court committed more than an error of judgment. State v.Reed (1996), 110 Ohio App.3d 749, 752, citing State v. Sage (1987),31 Ohio St.3d 173.
 {¶ 17} Defendants challenge the admissibility of exhibit 1, the power of attorney used to transfer title in Romania. They maintain the document was not properly authenticated, and it was improper to allow a duplicate of the original.
 {¶ 18} Evid. R. 901 provides, in relevant part:
 {¶ 19} "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."
 {¶ 20} In this case, plaintiff offered evidence sufficient to support a finding that the document was what plaintiff claimed, to wit, the notarized document was a power of attorney fraudulently signed to perpetrate the transfer of property in Romania. Moreoever, on direct and cross-examination, defendant Lou Ann testified that she notarized the document. We find exhibit 1 was properly authenticated. *Page 8 
 {¶ 21} As to the claim that the document was an inadmissible duplicate, Evid. R. 1002 provides that to prove the content of a writing, the original is generally required. However, duplicates are admissible where it is established that no original can be obtained by any available judicial process or procedure. Evid. R. 1004(2). In this case, plaintiff's testimony as well as an affidavit from plaintiff's counsel in Romania established the original was unavailable. We therefore find exhibit 1 was properly admitted before the trial court.
 {¶ 22} Defendants next maintain exhibit 5, the Romanian court journal entry rendering judgment in favor of plaintiffs, was not self-authenticating. The record does not contain an objection to the admission of this document and does not contain objections to exhibits 3 (Sibiu property record), exhibit 10 (letter from the tenant of the parcel) and exhibit 11 (property record with government certifications). Accordingly, because this is a civil matter, we may review only for plain error where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings."Goldfuss v. Davidson, 79 Ohio St.3d 116, 121, 1997-Ohio-401,679 N.E.2d 1099.
 {¶ 23} Evid. R. 902 provides, in relevant part,
 {¶ 24} "Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following: *Page 9 
 {¶ 25} "(3) Foreign public documents. A document purporting to be executed or attested in his official capacity by a person authorized by the laws of a foreign country to make the execution or attestation, and accompanied by a final certification as to the genuineness of the signature and official position (a) of the executing or attesting person, or (b) of any foreign official whose certificate of genuineness of signature and official position relates to the execution or attestation or is in a chain of certificates of genuineness of signature and official position relating to the execution or attestation. A final certification may be made by a secretary of embassy or legation, consul general, consul, vice consul, or consular agent of the United States, or a diplomatic or consular official of the foreign country assigned accredited to the United States. If reasonable opportunity has been given to all parties to investigate the authenticity and accuracy of official documents, the court may, for good cause shown, order that they be treated as presumptively authentic without final certification or permit them to be evidenced by an attested summary with or without final certification."
 {¶ 26} In the instant case, defendants insist that exhibit 5, the Romanian court journal entry rendering judgment in favor of plaintiffs, was not self-authenticating yet they urged the trial court to accept as authentic the original Romanian court judgment dismissing a previously filed case against defendants, which had been authenticated in the same manner.[3] Moreover, in their motion for summary *Page 10 
judgment, defendants included instructions from the United States Department of State detailing how to properly authenticate a Romanian document pursuant to the Hague Convention. Documents issued in Romania are required to have an apostille from the Romanian Ministry of Justice. In this case, both defendants' documents and exhibit 5 bore the proper apostille and are therefore self-authenticating. We find, therefore, that the trial court properly admitted exhibit 5 and find no plain error. We also decline to find plain error in the trial court's admission of exhibits 3, 10 and 11.
 {¶ 27} Lastly, defendants contend exhibit 4, the affidavit from plaintiff's counsel in Romania, constituted inadmissible hearsay. Exhibit 4, was a properly authenticated document in which the attorney indicated that he was unable to procure the original of Exhibit 1, that the attorney had been paid $1,500 in legal fees, and that her investigation revealed that a bakery had been paying rent on the disputed property. Because this document merely referenced some of the matters to which plaintiff testified at trial, we cannot conclude that the trial court committed prejudicial error in permitting the introduction of this exhibit. The first and third assignments of error are without merit and are overruled.
 {¶ 28} Defendants' second assignment of error states:
 {¶ 29} "II. Reversible error was committed below when the trial court failed to apply principles of res judicata so as to bar the retrial of issues litigated by the same parties in Romania." *Page 11 
 {¶ 30} In their second assignment of error, defendants claim the trial court erred in failing to apply the doctrine of res judicata. Specifically, defendants assert that the Romanian court awarded plaintiff damages for the transfer so he cannot bring a new action for compensatory damages.
 {¶ 31} Res judicata is an affirmative defense pursuant to Civ. R. 8(C). If a party fails to properly raise the affirmative defense of res judicata, it is waived. Jim's Steak House, Inc. v. Cleveland (1998),81 Ohio St.3d 18, 20, 688 N.E.2d 506. It is well-settled that a party cannot assert new legal theories for the first time on appeal.Stores Realty Co. v. Cleveland (1975), 41 Ohio St.2d 41, 43; Lippy v.Society Natl. Bank (1993), 88 Ohio App.3d 33, 40. In this case, defendants failed to raise res judicata as an affirmative defense. Accordingly, this issue is waived, and we therefore decline to consider it.
 {¶ 32} In any event, the record demonstrates that the Romanian court nullified the transfer and simply awarded plaintiff a sum for "judging expenses," and there is no reference to damages. Based upon plaintiff's evidence regarding exchange rates, he was awarded only about $70 for such expenses and was not awarded compensatory damages. Defendant Lou Ann Nicula was not a party to the Romanian proceedings.
 {¶ 33} The third assignment of error is without merit.
 {¶ 34} Defendants' fourth assignment of error states: *Page 12 
 {¶ 35} "IV. The trial court committed prejudicial reversible error by failing to properly apply conflict of laws principles requiring a deferral to the courts of Romania."
 {¶ 36} Defendants essentially contend in their fourth assignment of error that principles of conflict of laws precluded the commencement of this trial, and therefore, the court erred in allowing the case to go to judgment. We find this assignment of error simply reasserts the res judicata claim which we rejected in defendants' second assignment of error.
 {¶ 37} Moreover, as we noted previously, an Ohio court has jurisdiction in an Ohio plaintiff's action for money damages for fraud concerning the conveyance of foreign land to which the defendant falsely asserted a claim of title and where the plaintiff does not seek an order regarding title to the foreign land. Cf. Miller v. Bieghler, supra. Such fraud action may be brought "wherever the person [of the defendant] be found, although [the] lands [are] not within the jurisdiction." Id.
 {¶ 38} Defendants insist that choice-of-law principles mandate that the trial court should have deferred to the Romanian court on any issue involving title to real estate in that country. Defendants maintain there were insufficient contacts in Ohio for jurisdiction in Ohio courts, relying on Bobb Chevrolet, Inc. v. Jack's Used Cars (2002),148 Ohio App.3d 97.
 {¶ 39} In that case the court noted that where "parties have failed to make an effective choice of law to govern a contract, Ohio courts are to decide the issue of the applicable state law by evaluating which state has the most significant *Page 13 
relationship to the transaction and the parties by considering the following: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." Id., citing Gries Sports Enterprises, Inc. v. Modell (1984),15 Ohio St.3d 284, syllabus. The court applied choice-of-law regarding contract law, not tort.
 {¶ 40} Different choice-of-law rules apply depending on whether the cause of action sounds in contract or in tort. Ohayon v. Safeco Ins.Co., 91 Ohio St.3d 474, 476, 2001-Ohio-100. The plaintiff in this case sued the defendants in tort law, to wit, fraud. Moreover, BobbChevrolet, Inc. v. Jack's Used Cars, supra, did not divest jurisdiction of one court in favor of jurisdiction in another court; rather it dictated which law to apply in an Ohio court in a case where choice-of-law was disputed. Therefore, defendants reliance onBobb is clearly misplaced.
 {¶ 41} In applying choice-of-law to the instant tort case, we find the trial court did not err. In order to determine in what state to litigate a tort action, "a presumption is created that the law of the place of the injury controls unless another jurisdiction has a more significant relationship to the lawsuit." Morgan v. Biro Mfg. Co. (1984),15 Ohio St.3d 339, 342. The factors to consider when determining the state with the most significant relationship are (1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (4) the place where the relationship between the parties, if any, is located; and (5) any factors in Section 6 of *Page 14 
1 Restatement of the Law 2d, Conflict of Laws 10. Morgan v. Biro Mfg.Co., supra. Although the parcel is located in Romania, the fraud took place in Ohio and all the parties to the litigation live in Ohio. The trial court clearly informed the parties that it was proceeding only on the issue of the alleged forgery and not whether the Romaian court correctly decided ownership. (Tr. 119-120). We therefore find the trial court did not err and we overrule this assignment of error.
 {¶ 42} Defendants' fifth assignment of error states:
 {¶ 43} "V. The trial court committed prejudicial reversible error by granting comity to a Romanian court judgment in the absence of a showing of due process."
 {¶ 44} Defendants maintain the trial court was required to determine whether the Romanian judgment was rendered with due process of law before granting comity. However, as stated supra, a party cannot assert new legal theories for the first time on appeal. Stores Realty Co. v.Cleveland, supra. Defendants failed to raise this issue before the trial court. In any event, the trial court did not simply grant comity to the Romanian judgment on the title of the parcel and then give that judgment full faith and credit. Rather, the trial court held a trial on the issues of whether defendants were liable in damages to plaintiff for fraud, conversion and unlawful notarization for their conduct in Ohio. Plaintiff was required to establish these causes of action by a preponderance of the evidence, and in so doing, presented expert testimony concerning the forgery. Cf. Restatement of the Law (2nd) Conflict of Laws, Section 86, comment c ("Usually, a court will not abate or stay an action because of the pendency of an earlier in rem or quasi in rem action)." *Page 15 
 {¶ 45} This assignment of error is without merit.
Judgment affirmed.
It is ordered that appellee recover from appellants costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, P.J., and JAMES J. SWEENEY, J., CONCUR
[1] We note that an Ohio court has jurisdiction in an Ohio plaintiff's action for money damages for fraud concerning the conveyance of foreign land to which the defendant falsely asserted a claim of title, where the plaintiff does not seek an order regarding title to the foreign land. Cf. Miller v. Bieghler (1931), 123 Ohio St. 227, 174 N.E. 774. In a case of fraud, the action may be brought "wherever the person [of the defendant] be found, although [the] lands [are] not within the jurisdiction." Id.
[2] This matter was subsequently stayed after defendants filed a petition for bankruptcy.
[3] The original case in Romania was dismissed, but was reinstated following an appeal rendered in favor of plaintiff. *Page 1